**CITY OF SAN ANTONIO, Appellant,**

v.

**Keith A. BUTLER and Debbie K. Butler, Appellees.**

No. 04–02–00811–CV.

Court of Appeals of Texas, San Antonio.

Jan. 14, 2004.

Rehearing Overruled Feb. 25, 2004.

Nissa M. Sanders, Crofts & Callaway, P.C., Ricardo R. Reyna, Brock & Person, P.C., Michael Iram Ramirez, San Antonio, for Appellant.

Alex M. Miller, Francisco Guerra, IV, Watts Law Firm, L.L.P., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

In this interlocutory appeal, the City of San Antonio appeals the trial court's denial of the City's plea to the jurisdiction based on governmental immunity. Because we hold the City's immunity has not been waived under the facts of this case, we reverse the trial court's order and render judgment dismissing the claims against the City.

## Background

The City of San Antonio owns and operates a convention center known as the Alamodome. Appellees Keith and Debbie Butler were attending a KISS concert in the Alamodome when a drunken patron seated in the level above the Butlers jumped or fell over the rail and landed on Keith Butler, causing serious injuries. The Butlers sued four defendants: (1) Gilbert Garza, the individual who fell, (2) Beaver Productions, Inc., the company that produced the concert, (3) Aramark Sports & Entertainment Services, Inc., the concession company that allegedly sold alcohol to Garza at the concert, and (4) the City of San Antonio.[1] Garza was later nonsuited.

The City filed a plea to the jurisdiction asserting governmental immunity. The trial court denied the City's motion. On appeal, the Butlers argue: (1) the City's immunity from *suit* has been waived by section 51.075 of the Local Government Code and the City Charter; (2) the City was performing a proprietary rather than governmental function by selling alcohol; and (3) the Butler's alternate claims, *i.e.*, the City's misuse of alcohol, failure to correct a dangerous condition on the property (by removing Garza), and improper configuration of the Alamodome, fall within the exceptions to the Texas Tort Claims Act.

## Standard and Scope of Review

[1–4] A trial court's ruling on a plea to the trial court's subject matter jurisdiction is a question of law subject to *de novo*

---

1. The Butlers made four claims against the City: (1) the City, in a joint venture or joint enterprise with Aramark, served or sold alcohol to Garza when he was clearly intoxicated; (2) the City failed to maintain a safe environment, failed to keep its consumers safe, and failed to remedy a dangerous situation of which it had notice; (3) the City caused personal injury by "using" alcoholic beverages when it allowed alcohol to be sold to Garza when he was clearly intoxicated; and (4) the City caused personal injury by "using" the Alamodome for the concert when the facility was not "properly or safely arranged" and the City failed to either remedy the dangerous condition of the premises or warn the Butlers of the dangerous condition.

review. *Texas Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). "In determining whether jurisdiction exists, we accept all allegations in the pleadings as true." *Herring v. Welborn,* 27 S.W.3d 132, 136 (Tex.App.-San Antonio 2000, pet. denied). However, the plaintiff has the burden to plead facts affirmatively demonstrating the court's jurisdiction. *City of Dallas v. Reata Constr. Corp.,* 83 S.W.3d 392, 394 (Tex.App.-Dallas 2002, pet. filed). Therefore, we may consider evidence presented to the trial court as necessary to determine the jurisdictional facts. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000); *Snelling v. Mims,* 97 S.W.3d 646, 649 (Tex.App.-Waco 2002, no pet.).

### Governmental Immunity

#### (1) Section 51.075 and the City Charter

 Because the Butlers' argument that the City has no governmental immunity from suit is potentially dispositive of the appeal, we address that issue first. The Texas Supreme Court has distinguished between immunity from *suit,* which deprives the trial court of jurisdiction, and immunity from *liability,* which is an affirmative defense. *Texas Dept. of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Immunity from suit may be presented in a plea to the jurisdiction. *Id.* Immunity from liability is not properly presented in a plea to the jurisdiction; it must be pled and proved as any affirmative defense. *Texas Dept. of Mental Health & Mental Retardation v. Pearce,* 16 S.W.3d 456, 459 (Tex.App.-Waco 2000, pet. dism'd w.o.j.). Therefore, if the City has waived immunity from suit, the City may not challenge the Butlers' claims in a plea to the jurisdiction, and the trial court was correct to deny the

motion to dismiss.[2] *See Snelling,* 97 S.W.3d at 649; *City of Garland v. Shierk,* No. 05–99–00258, 2000 WL 721602, at *1 (Tex.App.-Dallas June 6, 2000, pet. denied) (not designated for publication).

 Under the Texas Tort Claims Act (TTCA), the issue of a city's immunity from suit is treated the same as that of the State. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 1997). For injuries or damages resulting from the City's performance of a governmental function, the TTCA waives immunity from suit for those specific cases in which liability potentially exists under the terms of the Act. Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 1997); *Pearce,* 16 S.W.3d at 459. Therefore, when the sole issue is whether sovereign immunity has been waived under the TTCA, immunity from suit and liability are intertwined and may be presented in a plea to the jurisdiction. However, the Butlers assert that the Legislature and the City waived the City's immunity from suit as a matter of law pursuant to section 51.075 of the Texas Local Government Code and the City Charter. *See* Tex. Loc. Gov't Code Ann. § 51.075 (Vernon 1999); San Antonio City Charter, Art. I, § 3 ¶ 1.

Section 51.075 of the Texas Local Government Code states that a home-rule city "may plead and be impleaded in any court." Tex. Loc. Gov't Code Ann. § 51.075. The City of San Antonio's City Charter states that the City may "sue and be sued, plead and be impleaded in all courts." City of San Antonio City Charter, Art. I, § 3 ¶ 1. This court has never considered whether the cited language in the local government code and the City Charter waives the City's immunity from

---

**2.** Although this issue was not raised in the trial court, waiver of immunity from suit impacts the trial court's subject matter jurisdiction. Therefore, it may be raised for the first time on appeal.

suit in the context of tort claims.[3]

The Texas Supreme Court has stated that language indicating the governmental entity has consented to "sue or be sued" is "quite plain and gives general consent for [the entity] to be sued in the courts of Texas such that immunity from suit is expressly waived." *Missouri Pacific RR Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970). Following *Missouri Pacific*, a number of courts of appeals have held that "sue and be sued," and similar "plead and be impleaded," language is sufficient to waive immunity from suit for municipalities and other government entities. *See, e.g., Goerlitz v. City of Midland*, 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed); *Alamo Community College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 747–48 (Tex.App.-San Antonio 1998, pet. denied)[4]; *Avmanco, Inc. v. City of Grand Prairie*, 835 S.W.2d 160, 165 (Tex.App.-Fort Worth 1992, writ dism'd) (city immunity);[5] *Webb v. City of Dallas*,

314 F.3d 787, 794 (5th Cir.2002) (gathering cases). Other courts of appeals have concluded that "sue and be sued" or "plead and be impleaded" provisions, as applied to cities, do not waive immunity from suit, but should be interpreted as defining the city's capacity to be sued as a corporate entity in those circumstances where sovereign immunity does not apply or has been waived by other legislative action. *See City of Mexia v. Tooke*, 115 S.W.3d 618, 622 (Tex.App.-Waco 2003, pet. filed); *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 398 (Tex.App.-Dallas 2002, pet. filed); *Jackson v. City of Galveston*, 837 S.W.2d 868, 871 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *see also* George C. Kraehe, *"There's Something About Cities": Understanding Proprietary Functions of Texas Municipalities and Governmental Immunity*, 32 TEX. TECH. L.REV. 1, 33–41 (2000) (hereinafter Kraehe, *"There's Something About Cities"*).[6] The Texas Supreme Court has

---

**3.** The three San Antonio cases cited by the City do not directly address the issue. In *Liu*, the City's plea to the jurisdiction was not appealed; only the summary judgment disposing of a contract claim was appealed. *Liu v. City of San Antonio*, 88 S.W.3d 737, 741 (Tex.App.-San Antonio 2002, pet. denied). In *Aguirre* and *Cortes*, although both cases affirm the City's plea to the jurisdiction, neither addresses the application of section 51.075. The issue does not appear to have been raised. *See Aguirre v. City of San Antonio*, 100 S.W.3d 247, 248 (Tex.App.-San Antonio, pet. denied) (not designated for publication) (plaintiff failed to show "use" within terms of Tort Claims Act); *City of San Antonio v. Cortes*, 5 S.W.3d 708, 710–12 (Tex.App.-San Antonio 1999, no pet.) (addressing waiver solely under the Civil Service Act and the Collective Bargaining Agreement).

**4.** *Abrogated on other grounds, Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591 (Tex.2001).

**5.** The Fort Worth Court of Appeals has consistently held that "sue and be sued" language

waives immunity from suit. *See State v. Kreider*, 44 S.W.3d 258, 266 (Tex.App.-Fort Worth 2001, pet. denied) (stating general rule of waiver for cities); *Knowles v. City of Granbury*, 953 S.W.2d 19, 23 (Tex.App.-Fort Worth 1997, pet. denied); *but see Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 448–49 (Tex.App.-Fort Worth 2001, no pet.) (analyzing waiver of immunity from suit for breach of contract claims separately from TTCA waiver).

**6.** It appears that only the Dallas and Waco courts of appeals have attempted to distinguish or harmonize the holding in *Missouri Pacific*. The Waco court of appeals held that the "plead and be impleaded" language used in section 51.075 has a substantively different meaning than the "sue and be sued" language interpreted by the supreme court in *Missouri Pacific*. *Tooke*, 115 S.W.3d 618, 622. In addition, the Waco court held "plead and be impleaded" did not waive immunity "beyond doubt" because it could as easily be read "as authorization for municipalities to file pleadings and be named in adverse pleadings in lawsuits in which immunity from suit has

never expressly overruled *Missouri Pacific,* and we are persuaded that *Missouri Pacific* can be harmonized with the express provisions of the TTCA. *See Tarrant County Hosp. Dist. v. Henry,* 52 S.W.3d 434, 450–51 (Tex.App.-Fort Worth 2001, no pet.) (affirming the trial court's denial of plea to the jurisdiction on contract claims but analyzing waiver of sovereign immunity on related tort claims under the TTCA); *Jackson,* 837 S.W.2d at 871 & n. 2 (noting the TTCA governs tort claims); *Satterfield,* 123 S.W.3d 63, 68–81 (Tex.App.— Dallas,2003) (Lang, J., dissenting) (concluding "sue and be sued" language remains a valid waiver of immunity from suit in contract actions).

Even at the time of *Missouri Pacific,* sovereign immunity from liability was waived when a governmental entity entered into a contract,[7] and *Missouri Pacific* involved a navigation district's liability on a written track agreement. *See Mo. Pac.,* 453 S.W.2d at 813–14. Therefore, the supreme court was concerned with "immunity from suit without consent even though there is no dispute as to the liability of the sovereign." *Id.* at 813. However, in 1969, the Texas Legislature adopted the TTCA to govern issues of sovereign immunity from tort claims, expressly limiting waiver of immunity from suit to those claims for which immunity from liability is specifically waived by the TTCA. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025(a) (Vernon 1997). Cities are included in a long list of "governmental units" that fall within the scope of the TTCA. *Id.* at § 101.001. Thus, under the TTCA, a city's immunity from suit is waived only by a showing that the tort claims in question are those types of claims for which the TTCA waives the city's immunity from liability. *Id.* at § 101.025(a). Even if it could be argued that the "sue and be sued" language of the Local Government Code was originally intended to waive a city's immunity from suit on all types of claims, that general waiver of immunity was severely limited in the tort context by the passage of the TTCA. *See Satterfield,* 123 S.W.3d at 78 (Lang, J., dissenting); *Henry,* 52 S.W.3d at 450–51; *Jackson,* 837 S.W.2d at 871 & n. 2; *see also* Kraehe, *"There's Something About Cities,"* at 39–41.

Our conclusion that the TTCA governs a city's immunity from suit on tort liability is further supported by section 20 of chapter 292 of the Legislature's Acts of 1969, which expressly repeals, annuls and voids "[a]ll laws or parts of laws, and all enactments, rules and regulations of any and all units of government, and all organic laws of such units of government, in conflict herewith." *See* Tort Claims Act, 61st Leg., R.S., ch. 292, § 20, 1969 Tex. Gen. Laws 874, 879. Construing section 51.075 of the Local Government Code and the TTCA so that effect is given to both, it is reasonable to conclude that even if the Legislature previously gave general consent to suits against cities, that consent was limited by the passage of the TTCA. *See Henry,* 52 S.W.3d at 450. Additionally, statutory rules of construction give precedence to the TTCA as the later-enacted, more specific statute controlling waiver of sovereign immunity from both suit and liability in tort cases. *See* TEX. GOV'T CODE ANN. § 311.025 (Vernon 1998); *City of*

---

already been waived." *Id.* at 622–624. The Dallas court of appeals concluded that *Missouri Pacific* is no longer applicable because "well-settled principles evolved since *Missouri Pacific*" require any waiver of immunity to be clear and unambiguous. *Satterfield &*

*Pontikes Construction, Inc. v. Irving Indep. Sch. Dist.,* 123 S.W.3d 63, 67–68 (Tex.App.-Dallas Sept.26, 2003, no pet. h.).

**7.** *See Federal Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 408 (Tex.1997).

*Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex. 1994).[8]

Finally, for many of the same reasons discussed with respect to section 51.075, the language of the City Charter should not be read to waive the City's immunity from suit with respect to tort claims. The City Charter, in the section titled "Powers of the City," paragraph 1, "General Powers," states, in pertinent part:

> The City may sue and be sued, plead and be impleaded in all courts, have a corporate existence, contract and be contracted with, ordain and establish such acts and regulations and ordinances not inconsistent with the Constitution and laws of this State ... the City shall have all municipal powers, functions, rights, privileges and *immunities* ... now or hereafter granted by the Constitution and laws of Texas. (emphasis added)

City of San Antonio City Charter, Art. I, § 3 ¶ 1.

The "sue and be sued, plead and be impleaded" language of the City Charter does not purport to waive sovereign immunity, rather it outlines the authority of the City as a corporate body. *See generally* Kraehe, *"There's Something About Cities,"* at 35–39. Furthermore, the City clearly retained all immunities granted by the laws of Texas, which includes the limitation on tort liability and corresponding immunity from suit set out in the TTCA. Accordingly, we conclude that neither section 51.075 of the Local Government Code nor the City Charter waives the City's governmental immunity from suit with respect to the tort claims brought in this case.

### (2) Waiver due to Proprietary Function

Having held that the City's immunity from suit has not been waived by the general statute or the City Charter, we must consider whether the City's conduct, as alleged by the Butlers, subjects the City to liability under the TTCA. The TTCA does not protect a city from liability arising from the city's conduct in performing a proprietary function. *See Tooke,* 115 S.W.3d at 620. The Butlers allege that the City was engaged in a proprietary rather than a government function when it sold or provided Garza with alcohol at the concert.

In section 101.0215, the TTCA lists numerous functions of a city that are designated as governmental. Among those functions are "civic, convention centers, or coliseums." TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(16) (Vernon Supp.2002). The proprietary functions of a municipality do not include those activities listed as governmental in section 101.0215(a) of the TTCA. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215©). This court has held that all activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the city's motive for engaging in the activity. *See Texas River Barges v. City of San Antonio,* 21 S.W.3d 347, 356–57

---

8. By reconciling the local government code and the TTCA, we remain consistent with our prior holding in *Obayashi. See Obayashi,* 980 S.W.2d at 747–48. In *Obayashi,* the college district asserted immunity from suit in a contract dispute. *Id.* at 746. Because the college district was governed by the same statutory "sue and be sued" language applicable to independent school districts, we held the general law evidenced the Legislature's consent to suit against the community college district. *Id.* at 747–48 (interpreting sections 130.084 and 11.151(a) of the Texas Education Code). Although Obayashi brought both tort and contract claims, all claims arose out of the contract dispute, and the college district did not raise the TTCA as a possible bar to those tort claims arising out of the contractual relationship. *Id.* at 747–48.

(Tex.App.-San Antonio 2000, pet. denied) (city's removal of barge company from marina is included within government function of operating a marina and park even if removal was motivated by desire to protect city's profit by exclusive contract with another barge company). Other courts have similarly held that all actions related to a designated government function are reclassified as governmental by the statute. *See City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 395 (Tex.App.-Dallas 2002, pet. filed) (marking the location of water main is encompassed by government function of "waterworks" and water services); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex.App.-Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994) (refusing to consider that some activities related to the operation of a city park might be proprietary where TTCA lists "parks and zoos" as government function).

The City contends that its actions with respect to the Alamodome are part of its governmental function of owning, operating, or maintaining a civic or convention center.[9] The Butlers attempt to split various aspects of the City's Alamodome operation into discrete functions and recharacterize certain of those functions as proprietary. They argue the City's conduct was proprietary because the City chose to contract for the sale of alcohol which would produce profits for the City. In *Texas River Barges*, the City voluntarily contracted with a vendor to allow barges on the river, an activity that would produce profits for the City; the City voluntarily chose not to contract with Texas River Barges. Yet the regulation of barges on the river fell within the government function. *See Texas River Barges*, 21 S.W.3d at 356-57. The

City has discretion to perform or not perform many activities in connection with its government functions. Neither that discretion nor the existence of a profit motive reclassifies one aspect of a government function into proprietary conduct. The ability to contract for use of the Alamodome is logically characterized as part of the operation of the facility and must be considered a government function.

◼ If we accept the Butlers' contention, every contract that the City enters for the purpose of making a profit would constitute a proprietary function, potentially subjecting the City to liability for torts committed by the vendors. By classifying many previously proprietary functions as governmental, the Legislature clearly intended to limit cities' liability except as allowed by the exceptions in the TTCA. *See Spindletop Mental Health & Mental Retardation v. Doe*, 54 S.W.3d 893, 897 (Tex.App.-Beaumont 2001, pet. denied.); *Mitchell*, 855 S.W.2d at 744. The Butlers' argument would undermine that intent. We conclude the City's activities as alleged in this lawsuit fall within the City's governmental function of owning, operating, or maintaining a civic or convention center. Therefore, to maintain their claim, the Butlers must allege the City committed an act for which the TTCA expressly waives immunity from liability.

### (3) Waiver Under the TTCA

#### (a) Use of Tangible Property

◼ The Butlers claim that even if the City's contract to allow sales of alcohol at the Alamodome is a governmental function, the City's immunity is waived under

---

9. The evidence shows that the City owned the Alamodome and contracted with the San Antonio Spurs organization to operate the facility. The Spurs organization contracted with various vendors to provide food and beverages for events in the Alamodome. Under our analysis, however, it would not matter if the City had contracted directly with the vendors.

the TTCA because the injury to Keith Butler arose from the "use" of alcohol by the City. The Butlers assert that the "use" of alcohol is a use of tangible personal property for which immunity is waived under section 101.021(2) of the TTCA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1997). The Butlers compare the City's conduct in this case with those cases where "use" of property has been found because a government agency provided inadequate or defective property to a claimant. *See, e.g., Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (football uniform was defective because it lacked brace); *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 171 (Tex.1989) (swimming attire defective for epileptic because it lacked a life preserver); *Overton Mem. Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975) (hospital bed without rails was defective); *Christilles v. Southwest Tex. State Univ.*, 639 S.W.2d 38, 41 (Tex.App.-Austin 1982, writ ref'd n.r.e.) (breakable glass provided for theatrical play was not safe for intended use); *Texas A & M Univ. v. Bishop*, 105 S.W.3d 646, 656 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.) (real knife provided for theatrical production was not safe for intended use).

■ In this case, there is no allegation that the beer was defective. Rather, the Butlers' true claim is that the City had the right to stop the vendor from selling beer to Garza when he was obviously intoxicated. In general, the failure to do some act is not considered a use or misuse of property. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998) (true complaint was failure to restrain patient, not use or misuse of property); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996) (failure to give injection rather than oral dose of medicine was a non-use of property);

*Snelling*, 97 S.W.3d at 653 (complaint was really of failure to act, not use of property). The most that can be said is that the City allowed a vendor to sell beer, making that beer available to the public for consumption. The City did not require the vendor to sell to Garza nor did the City provide the beer directly to Garza. No city employee was involved with the sale. We hold the City did not "use" alcohol as contemplated by the TTCA.

*(b) Premises Liability*

■ The City may also be liable if Butler's injuries arose from a defect or condition of the premises of the Alamodome. The Butlers argue Garza's drunken state was a condition that the City failed to remedy. The Butlers also claim the Alamodome was defective in the configuration of the facility for the concert.

■ The TTCA waives immunity for claims arising out of a condition of real property, in other words, a premises defect. *See Cobb v. Tex. Dept. of Criminal Justice*, 965 S.W.2d 59, 62 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *see also* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021(2), 101.022 (Vernon 1997). Because the TTCA does not define "premises liability," courts have looked to its ordinary meaning. *See Cobb*, 965 S.W.2d at 62. " 'Premises' is defined as a building, its parts, grounds, and appurtenances." *Id.* "A 'defect' is defined as an imperfection, shortcoming, or 'want of something necessary for completion.' " *Id.; see also Vongphachanh v. City of Dallas*, No. 05–02–00566–CV, 2002 WL 31247974, at *3 (Tex.App.-Dallas October 8, 2002, no pet. h.) (not designated for publication) (citing *Cobb* ). Thus, to make a claim based on a condition of real property, a plaintiff must complain of something defective or inadequate about the property itself. *Vongphachanh*, 2002 WL 31247974, at *3. Allegations that a plaintiff was injured by persons "purpose-

fully misusing or misbehaving on the [property]" do not give rise to a claim for a premises defect under the TTCA. *Id.* "Property does not cause injury if it does no more than furnish the condition that makes the injury possible." *Archibeque v. North Tex. State Hosp.-Wichita Falls Campus,* 115 S.W.3d 154, 159 (Tex.App.-Fort Worth 2003, no pet. h.); *see Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995).

Further, although a premises owner under common law can potentially be liable for failure to provide security, the TTCA has not been construed so broadly. A failure to supervise or failure to provide security is considered a failure to act, not a condition of the property. *See Vongpha-chanh,* 2002 WL 31247974, at *3; *Henry,* 52 S.W.3d at 444 & n. 35. The Butlers have failed to state a claim for a premises defect arising from Garza's drunken behavior on the property.

In the alternative, the Butlers claim that the configuration of the Alamodome may be a condition of real property for which a claim made be made.[10] Nonetheless, there are no facts in this case to suggest the configuration of the Alamodome was a premises defect. There is no allegation of a defect in the rail or the construction of the Dome itself. The configuration of the Alamodome is part of its design. Designs for a building or other municipal premises are discretionary and therefore immunity from liability applies. *See Mitchell,* 855 S.W.2d at 745. We hold the Butlers have failed to allege a defect in the Alamodome itself sufficient to waive the City's immunity under the TTCA.

### Conclusion

In conclusion, we hold the City's governmental immunity from suit in tort cases has not been waived by the Local Government Code or the provisions of the City Charter. Further, we hold the City was engaged in a governmental function when it contracted for operation of the Alamodome. Finally, we hold the Butlers failed to allege a claim for "use" of tangible personal property or premises defect sufficient to waive the City's immunity from suit and liability under the TTCA. The order of the trial court denying the City's plea to the jurisdiction is reversed, and we render judgment that the Butlers' claims against the City are dismissed. Costs of appeal shall be paid by the appellants.

10. *See Vela v. City of McAllen,* 894 S.W.2d 836 (Tex.App.-Corpus Christi 1995, no writ). In *Vela,* the plaintiff was arrested for being drunk and was being fingerprinted in the booking room where he fell and injured himself on the furniture during an epileptic attack. *Id.* at 838. The court held that the "use" of the booking room and the arrangement of furniture in the room was equivalent to the "use" of personal property contemplated in the TTCA. *Id.* at 840. *Vela* has been criticized by other courts for its language if not its outcome. The Eastland court declined to find that the use of a room is equivalent to the use of personal property. *Laman v. Big* *Spring State Hosp.,* 970 S.W.2d 670, 672 (Tex. App.-Eastland 1998, pet. denied). In *Laman,* the court held the cause of the plaintiff's injury was more properly characterized as a failure to supervise than use of property. *Id.* (placement of patient in room with open door is not use of personal property). Similarly, the Fort Worth court held that a failure to provide security or to prevent the conduct of a third party is not equivalent to a condition or use of property. *Henry,* 52 S.W.3d at 444 & n. 35 (declining to find liability where plaintiff alleged assault arose from defect of failing to provide security alarm).