**Dissenting opinion issued September 29, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-14-00866-CV**

———————————

**CONNIE ROGGE, INDIVIDUALLY AND AS HEIR OF RICHARD HOLLAS ROGGE, RICHARD ROGGE, INDIVIDUALLY AND AS HEIR OF RICHARD HOLLAS ROGGE, AND RICHARD ROGGE AS ADMINISTRATOR OF THE ESTATE OF RICHARD HOLLAS ROGGE,** Appellants

**V.**

**THE CITY OF RICHMOND, TEXAS, Appellee**

On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Case No. 11-DCV-194261

## DISSENTING OPINION

I respectfully dissent. Appellants Richard and Connie Rogge sued the City of

Richmond after their son committed suicide in a jail holding cell by using his clothes

to hang himself from a grate with large holes and no safety screen that was placed directly over the toilet. The City filed a plea to the jurisdiction and motion for summary judgment asserting governmental immunity. The Rogges argued that the City's immunity was waived under the Texas Tort Claims Act because they had asserted a claim that their son's injuries were proximately caused either by the use and/or condition of tangible property or by a premises defect and the Tort Claims Act waives the City's immunity for both. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011 & Supp. 2016). The trial court granted the City's plea to the jurisdiction.

The majority states that the Rogges pled "a premises-liablity claim based on allegations that their son's death was caused by a defective metal grate covering an air vent on the ceiling of the jail cell." Slip Op. at 2. It then concludes that the Tort Claims Act does not waive immunity in this case because "[t]here is no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent" and the jurisdictional facts did not "show that the [defective] condition of the grate actually caused the injury." It therefore holds that the court lacked subject-matter jurisdiction over the Rogges' claims and affirms the trial court's order dismissing them.

The claim the majority dismisses on this plea to the jurisdiction is, however, the *majority's* claim, *repled by the majority* on behalf of the Rogges to state a claim

2

for a defective grate that the Rogges did not make and cannot reasonably be construed as having made. And the lack of jurisdictional evidence cited by the majority—the lack of evidence to support the claim of a defective vent—is only relevant to the claim made by the *majority*, not the Rogges, and is irrelevant to the Rogges' claim. The Rogges are entitled to have this plea to the jurisdiction decided on the question of whether the City's immunity under the Tort Claims Act was waived by the Rogges' *own* claim as supported by their jurisdictional evidence. And this Court is bound to view the pleadings and evidence in the light most favorable to the judgment below and to allow repleading if they are factually insufficient. This case should not be dismissed on putatively insufficient pleadings manufactured for the plaintiffs by the appellate Court.

I would hold that the Rogges have properly pled a premises defect claim against the City, that they have properly supported every element of their claim with jurisdictional evidence sufficient to take to a jury, and that, therefore, the City's immunity from suit is waived by the Tort Claims Act. I would reverse the trial court's order and remand the case for trial on the merits. And even if I were to conclude that the Rogges failed to plead a sufficient waiver under the Tort Claims Act, I would have remanded the case to the trial court for repleading. I would not dismiss the case for insufficient pleading of jurisdictional facts without giving the Rogges the chance to replead, in clear contravention of established authority.

**Plea to the Jurisdiction**

When a defendant challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Miranda*, 133 S.W.3d at 227. "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant" and will "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 228.

When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If, however, the evidence creates a fact question regarding jurisdiction, then "the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. Or, "[i]f the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be awarded the opportunity to amend."

4

*Id.* at 226–27.  Only if the pleadings affirmatively negate the existence of jurisdiction may a plea to the jurisdiction be granted without allowing the plaintiffs an opportunity to amend.  *Id.* at 227.

### Premises Defect

In their second issue, the Rogges argue that the trial court erred by granting the City's plea to the jurisdiction on immunity grounds because the City's immunity from suit was waived due to the dangerous condition of the property, namely, the placement of the large-holed metal grate, directly over the toilet in the holding cell, which they contend was a proximate cause of their son's death.  They point out that the Texas Tort Claims Act expressly waives a governmental entity's immunity from suit for personal injuries proximately caused by a dangerous condition of the premises of which the entity was aware and did not take reasonable steps to make safe.

#### A.     Premises Defect as a Basis for Waiver of Governmental Immunity

"The [Texas Tort Claims Act] waives immunity for claims arising out of a condition of real property, in other words, a premises defect." *City of San Antonio v. Butler*, 131 S.W.3d 170, 179 (Tex. App.—San Antonio 2004, pet. denied) (citing *Cobb v. Tex. Dept. of Criminal Justice*, 965 S.W.2d 59, 62 (Tex. App.—Houston [1st Dist.] 1998, no pet.)); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022 (West 2011).  To make a claim based on a condition of real property in

order to waive governmental immunity under the Act, "a plaintiff must complain of something defective or inadequate about the property itself." *Butler*, 131 S.W.3d at 179.

Under the Act, "a governmental unit is liable for 'personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.'" *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (2)); *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002); *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997). The Act thus limits the duty owed by a governmental entity to a claimant to "the duty that a private person owes to a licensee on private property." *Brown*, 80 S.W.3d at 554 (quoting TEX. CIV. PRAC. & REM. CODE § 101.022 (a)); *City of Grapevine*, 946 S.W.2d at 843. A licensee asserting a premises defect claim must show "that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred." *Brown*, 80 S.W.3d at 554. A possessor of property "must not injure a licensee by willful, wanton, or grossly negligent conduct, and must use ordinary care either to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to make the condition reasonably safe." *Id.* (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). "An exception to the

6

general rule is that if the landowner has knowledge of a dangerous condition and the licensee does not, the landowner has a duty either to warn the licensee or to make the condition reasonably safe." *City of Grapevine*, 946 S.W.3d at 843.

"[I]mmunity is waived only if the condition (1) poses a hazard in the intended and ordinary use of the property and (2) actually causes an injury or death." *Rusk State Hosp.*, 392 S.W.3d at 98. In this context, courts must determine whether the condition of the property proximately caused the alleged injury. *See City of Dallas v. Sanchez*, —S.W.3d—, No. 15-0094, 2016 WL 3568055, at *3 (Tex. July 1, 2016). "Proximate cause requires both cause in fact and foreseeability," meaning that the condition must "serve[ ] as 'a substantial factor in causing the injury and without which the injury would not have occurred.'" *Id.* (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015) and *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010)). "To be a substantial factor, the condition or use of the property 'must actually have caused the injury.'" *Id.* (citing *Posey v. Dallas Cty.*, 290 S.W.3d 869, 872 (Tex. 2009) ("This nexus requires more than mere involvement of property; rather, the condition must actually have caused the injury.")). However, to be a proximate cause, a cause need not be the sole cause; it need only be a substantial factor without which the injury would not have occurred. *See Del Lago Partners*, 307 S.W.3d at 774. An injury may have more than one proximate cause. *Id.*

7

Immunity is waived for "claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that lack of this integral component led to the plaintiff's injuries." *Rusk State Hosp.*, 392 S.W.3d at 99 (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996)); *see San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 247 (Tex. 2004). This is so because the injury would not have happened but for the missing safety component even though the missing component did not by itself cause the injury.

A condition poses an unreasonable risk of harm for premises-defect purposes when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Brown*, 80 S.W.3d at 556. Foreseeability in this context "does not require that the exact sequence of events that produced an injury be foreseeable," but only that the general damage must be foreseeable. *Id.*

## B. The Rogges' Premises Defect Claim

Here, the Rogges contend that the positioning of the large-holed air vent directly above the toilet in the holding cell to which their intoxicated son was taken after being deprived of his medication for depression was a hazard when the holding cell was used for its intended purpose. They assert that the air vent was covered by a grate with holes large enough to insert an object—such as the clothing the Rogges' son used to hang himself—and it lacked a safety mesh barrier. The Rogges contend

this air vent constituted a hazard for the ordinary use of the holding cell to hold prisoners at high risk of suicide; that the suicide of an inebriated prisoner held in the cell without anti-depressant medication was a foreseeable risk of the City's placing the toilet directly beneath the vent; that the City knew of the hazard; and that it nevertheless took that risk by placing the Rogges' son in that cell without his medication and by failing to make the premises reasonably safe by either placing a wire mesh behind the grate to prevent the insertion of objects or even conducting continual surveillance of the cell. The Rogges also introduced jurisdictional evidence to support each of the elements of this claim.

Specifically, the Rogges pled as follows:

33. *Inside of the holding cell on Defendant CITY OF RICHMOND's property was a metal grate affixed into the ceiling and position [sic] directly above a toilet located in the holding cell. This condition of the premises was a premises defect and placed an unreasonable risk of harm to ROGGE as the grate was easily accessible by a person to cause or inflict harm to himself as in the present case* where ROGGE was able to hang himself and ultimately take his own life by the condition of the premises.

34. Furthermore, *Defendant CITY OF RICHMOND had actual knowledge of the premises defect and* further Defendant *was aware that such defect was a dangerous condition. Moreover, the dangerous condition was created by Defendant CITY OF RICHMOND through the design and use of the premises*.

35. Defendant CITY OF RICHMOND *breached its duties of ordinary care by creating the dangerous condition, failing to warn* ROGGE of the condition *and failing to make the condition reasonably safe*. Defendant's breach of those duties proximately caused the

9

Plaintiff's injuries. Defendant's actions were not only negligent, but *grossly negligent.*

(Emphasis added).

Thus, the Rogges claimed that positioning a vent directly over the toilet without any safety mesh and with holes large enough to insert the clothing their son used to hang himself was an inherently dangerous condition of the City's holding cell that the City created and of which it was aware. In support of this claim, the Rogges introduced the expert testimony of Wayne Gondeck, an architect with over thirty years of experience in the design and construction of jails and holding cells. Gondeck testified that the air vent with large holes and lacking a mesh backing placed directly over the toilet in the holding cell was a proximate cause of the Rogges' son's injuries. He testified that properly constructed cells use a vent with much smaller holes into which objects cannot be introduced—vents similar to the one the City placed in this holding cell after the Rogges' son's suicide. And he testified that contemporaneous industry recommendations recommended the use of smaller ventilation holes as an additional means to prevent suicide along with the preferred methods of identifying at-risk individuals and closely monitoring them.

After establishing his expert credentials as a jail architect and the facts and data upon which he relied, Gondeck opined in his affidavit:

> While *the air register was the primary fixture used in facilitating the suicide by hanging,* the CELL arrangement and, in particular, the full-height privacy partition provides a hiding space that allowed the

suicide act to be carried out in hiding or isolation.  *The location of the air register directly above the toilet/lavatory plumbing fixture made the air register readily accessible to prisoners.*  If a lower-height privacy screen had been used in the CELL then an act of suicide by hanging from the air register could only occur in view of the observation window located in the CELL door.  The observation window in the CELL door provides the only view for staff from outside of the CELL.  A continuously staffed post is not provided that has direct view into the observation window in the CELL door.

I have *concluded the following characteristics of the CELL were not properly planned or provided to house prisoners, specifically those who are intoxicated or have suicidal tendencies*:

1. CELL location is not situated to be constantly viewed from a continuously staffed post.
2. Full-height privacy partition at the toilet area creates a hiding space, away from view of staff.
3. *Lattice type security air register located in ceiling, directly above the toilet/lavatory plumbing fixture, out of direct view of staff, provides a readily accessible tie-off point in the hiding space.*
4. *These physical characteristics of the CELL are known to cause or contribute to prisoner injury.  A possible act of the nature in this matter was foreseeable in the planning and building of the CELL.  It is my opinion that the planning and building of the CELL fell below the standard of care because the CELL was not suitably located, arranged, nor equipped for housing prisoners,* based on generally accepted or best practices, customarily used in the planning or building of a jail or holding facility at the time the FACILITY was planned and built.

(Emphasis added).

I would hold that the Rogges have properly pled a cause of action for premises defect against the City, that they have properly supported the challenged jurisdictional facts with expert testimony that supports jurisdiction in the trial court over the Rogges' claims under Tort Claims Act sections 101.021(1) and 102.022(a),

11

and that, therefore, dismissal of their claim for failure to plead and prove jurisdictional facts sufficient to waive the City's immunity from suit under the Tort Claims Act was improper. *See Miranda*, 133 S.W.3d at 225–26. I would, therefore, reverse the trial court's order of dismissal.

The majority, however, repleads the Rogges' claim for them. It claims the Rogges pled that the vent was defective *in itself* when used *as a cover for an air vent.* This completely misrepresents the pleadings and the Rogges' expert testimony and causes the Rogges' pleadings not to state a claim for a premises defect. It then rejects the Rogges' cause of action on the pleadings for failing to adequately plead a premises defect claim against the City, and it rejects Gondeck's testimony as non-probative of the repled claim, stating:

> On appeal, *the Rogges contend that the metal grate lacked an integral safety component*. They rely on excerpts from the architect's deposition and his report *to support their claim that the ventilation holes in the metal grate were too large for use in a holding cell* and that a mesh backing was required. *They argue that the mesh backing was an integral safety component that the metal grate lacked.*
> *The architect* testified that contemporaneous industry recommendations promoted the use of smaller ventilation holes as an additional means to prevent suicide, along with the preferred methods of identifying at-risk individuals and closely monitoring them. He *did not testify that the metal grate lacked an integral safety component.*
>
> . . . .
>
> *There is no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent. None of the jurisdictional facts show that the grate actually caused the injury.*

12

Slip Op. at 15–16 (emphasis added). This argument misrepresents both the Rogges' pleadings and the purpose of their jurisdictional evidence. The Rogges did not just plead that the vent "lacked an integral safety component" for use as an air vent. They pled that the vent lacked a safety component that could have made the premises safe and could thereby have remedied the hazard the City created by placing the toilet directly under a vent with large holes and which it knew to be a safety hazard and a premises defect. And their expert testified that "the air register was the primary fixture used in facilitating the suicide by hanging"; that "*the location of the air register directly above the toilet/lavatory plumbing fixture made the air register readily accessible to prisoners*"; that, because of this, and because of privacy walls in the cell that prevented the toilet area from being seen from the cell observation post, "the following characteristics of the CELL were not properly planned or provided to house prisoners, specifically those who are intoxicated or have suicidal tendencies: . . . 3. *Lattice type security air register located in ceiling, directly above the toilet/lavatory plumbing fixture, out of direct view of staff*," which provided "a readily accessible tie-off point in the hiding space," so that, this feature was a "physical characteristic[] of the CELL . . . known to cause or contribute to prisoner injury," and thus, "[a] possible act of the nature in this matter was foreseeable."

There is simply nothing in the Rogges' pleadings to support the majority's claim that the Rogges pled that air vents without mesh backing are *in themselves* a

13

safety hazard "when used as an air vent." And the majority mischaracterizes both the Rogges' pleadings and the jurisdictional evidence needed to support *their* claim—as opposed to its own claim—that there is "no evidence in the appellate record that the metal grating was inherently dangerous or hazardous in its intended use as a cover for the air vent." Slip Op. at 16. Thus, instead of "tak[ing] as true all evidence favorable to the nonmovant" and "indulg[ing] every reasonable inference and resolv[ing] any doubts in the nonmovant's favor," as required by law, the majority does just the opposite. *Miranda*, 133 S.W.3d at 228. It claims the Rogges' cause of action for a premises defect was insufficiently pled, and it dismisses the cause of action without allowing the Rogges to replead the facts it claims should have been pled to demonstrate jurisdiction under the Tort Claims Act, in direct violation of *Miranda*. *See id.* at 226–27 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.").

In actuality, the Rogges pled—as required to plead a premises defect claim under Tort Claims Act sections 101.021(2) and 101.022(a)—that the City had a duty to keep the premises safe for the purposes of a holding cell and that it breached that duty by failing to use ordinary care to keep the premises safe, knowing that the wide-

14

holed grate directly over the toilet in the cell created a dangerous condition for prisoners prone to suicide. And the Rogges also pled that the City violated this duty by installing a vent that lacked an integral safety component—mesh backing—directly over the toilet in the holding cell in which their son was held. *See Rusk State Hosp.*, 392 S.W.3d at 99; *Cowan*, 128 S.W.3d at 247; *Kerrville State Hosp.*, 923 S.W.2d at 585 (holding that immunity is waived for "claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that lack of this integral component led to the plaintiff's injuries"). The Rogges thus specifically pled that the placement of the toilet directly below a vent with a grate with large holes in a holding cell built to house prisoners with suicidal tendencies—a danger of which the City had knowledge—was a defect in the property itself, and they supported their claims with expert testimony on every element of their claim.

I would hold that the Rogges' pleadings, which are supported by evidence of the jurisdictional facts, are clearly sufficient to support waiver of the City's immunity to their premises defect claim under the Tort Claims Act sections 101.021(2) and 101.022(a). But even if the evidence had merely *created a fact question* as to jurisdiction—such as, whether the placement of the toilet directly under the air vent with large holes and lacking the mesh backing that would have prevented the intrusion of objects created a hazard for the safety of prisoners with

suicidal tendencies—then the trial court could not have properly granted the plea to the jurisdiction; instead, it should have denied the plea and left the facts to be resolved by the fact finder. *See Miranda*, 133 S.W.3d at 227–28. And if the Rogges had pled only *insufficient* facts—such as *why* the air vent with large holes was a safety hazard—as the majority claims they did, they should have been allowed to replead. *Id.* at 226–27. Only if their pleadings had "affirmatively *negate[d]* the existence of jurisdiction" could the trial court—or this Court—have properly granted or affirmed the plea to the jurisdiction without allowing the Rogges the opportunity to replead. *Id.* at 227 (emphasis added). That was patently not the case here. Therefore, I cannot agree with the majority's disposition of this case on a plea to the jurisdiction.

I would decide this plea to the jurisdiction on the Rogges' claims and jurisdictional evidence—not my own or the majority's characterization of them. Taking the pleadings and jurisdictional evidence as true—as we must—I would conclude that the Rogges' pleadings and the jurisdictional evidence demonstrate that the placement of the toilet directly beneath a large-holed vent lacking a required safety mesh in the holding cell for prisoners at high risk of suicide created a hazard of which the City was aware and which it failed to use ordinary care to correct— such that the type and placement of the metal grate was dangerous and was "a substantial factor in causing the injury[, i.e., one] without which the injury would

16

not have occurred." *Sanchez*, 2016 WL 3568055, at *3; *Del Lago Partners*, 307 S.W.3d at 774; *see also Miranda*, 133 S.W.3d at 226–28 (stating standard of review of plea to jurisdiction in which evidence is adduced).

I would hold that the pleadings in this case fully satisfy the requirements for pleading a premises defect claim under the Tort Claims Act sections 101.021(2) and 101.022(a) under well-established authority. Therefore, the City's immunity to the Rogges' claims is waived by the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022(a); *Rusk State Hosp.*, 392 S.W.3d at 97; *Brown*, 80 S.W.3d at 554. I would hold that the trial court erred in dismissing the Rogges' claims on governmental immunity grounds. *See Miranda*, 133 S.W.3d at 226–28. I would deny the plea.

## Conclusion

I would reverse the judgment of the trial court and remand for trial on the merits.

Evelyn V. Keyes
Justice

Panel consists of Justice Keyes, Massengale, and Lloyd.

Justice Keyes, dissenting.