# NO. 12-13-00262-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WASSON INTERESTS, LTD.,*<br>*APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CITY OF JACKSONVILLE, TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *OPINION*

The Texas Supreme Court remanded this case to us to determine whether the City of Jacksonville's actions in terminating Wasson Interests, Ltd.'s (WIL) assumed ninety-nine year lease of real property on the City's water reservoir is a governmental or proprietary function. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016). Because we determine that the City's acts that form the basis of this suit are part of four governmental functions described in the Texas Tort Claims Act (TTCA), we affirm the trial court's judgment.

## BACKGROUND

The City of Jacksonville created Lake Jacksonville in the late 1950s as the City's reservoir to provide a healthy and sustainable municipal water supply. As described in the summary judgment evidence before the trial court, rules and regulations were established by the City for its reservoir "aimed at preserving: a safe and healthy municipal water supply, abundant recreational fishing opportunities, a variety of recreational boating opportunities, and property values for the improvements made upon lease lots for visitors, residents and community water users alike." In addition to these rules and regulations, the City's zoning ordinance covered the lots around the reservoir known as Lake Jacksonville.

In 1996, James and Stacy Wasson assumed an existing ninety-nine year lease on lot 43 and signed a ninety-nine year lease on lot 46 on the lake.[1] Both leases contained the following provision:

> ALL building restrictions, sanitary regulations, hunting and fishing regulations, safety regulations, zoning ordinances, and any and all other regulations and restrictions now in force, or which may be hereafter placed in force by Lessor regarding the use and occupancy of said premises and of Lake Jacksonville in general, are hereby made a part of this contract and incorporated herein by reference, and Lessee accepts said property and premises subject hereto and agrees to abide thereby. Lessee acknowledges receipt of a copy of all restrictions, regulations, and ordinances in effect on the date of this instrument.

The City's zoning ordinance specifically defined what constituted impermissible commercial activity on lots 43 and 46.

The Wassons first used lots 43 and 46 as their primary residence, a permissible activity under the City's zoning ordinances. But after relocating to Tyler, they conveyed the two lots to WIL. WIL rented the property to individuals for terms of a week or less. In response, the City sent an eviction notice, notifying WIL that its short term rentals constituted a commercial use of the property, which violated its zoning ordinances specified in WIL's lease. The City and WIL entered into a reinstatement agreement that specified the property's acceptable uses under the lease.

WIL unsuccessfully sought a variance from the Lake Jacksonville Advisory Board and the Jacksonville City Council to allow its commercial use of the two lots. The City later sent a second eviction notice based on WIL's continued commercial use of the property. The notice informed WIL that its use of the property was a violation of the reinstatement agreement. WIL filed suit, alleging that the City breached the lease by improperly terminating the lease and evicting WIL. WIL also sought injunctive and declaratory relief. Following extensive discovery, the City filed a combined motion for a traditional and a no evidence summary judgment. Among other arguments, the City contended in the motion that it retained governmental immunity, and consequently, the trial court lacked jurisdiction over the suit. The trial court granted the motion for summary judgment without stating a reason.

---

[1] The legal description for these two lots is LOT 43, LOT 46, BLOCK A, LAKE SPRINGS SUBDIVISION, Lake Jacksonville, Cherokee County, Texas, according to the plat thereof recorded in Plat Cabinet A, Slide 102B, Plat Records of Cherokee County, Texas. These two lots will be referred to as lot 43 and lot 46 throughout the remainder of this opinion.

On remand from the Texas Supreme Court, we are tasked with determining whether enforcement of a zoning ordinance applied to lots 43 and 46 leased on the City's reservoir and used for its water supply is a governmental or proprietary function. WIL contends that this is a proprietary function because the City made a discretionary decision to lease lots on its reservoir for profit. The City contends that its enforcement of the lease's land use restrictions under the zoning ordinance is a governmental function. The City also contends that it acted to maintain and preserve the reservoir, likewise a governmental function.

## Standard of Review

Subject matter jurisdiction is essential to a court's power to decide a case. ***Bland Indep. Sch. Dist. v. Blue***, 34 S.W.3d 547, 553-54 (Tex. 2000). The absence of subject matter jurisdiction may be raised in a motion for summary judgment. ***Id***. at 554. Governmental immunity from suit defeats a trial court's jurisdiction. ***Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund***, 212 S.W.3d 320, 323 (Tex. 2006).

Normally, when both no evidence and traditional summary judgment motions are filed, we address the no evidence motion first. ***Poag v. Flories***, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied). Here, we will review the propriety of granting the traditional summary judgment first because it is dispositive. *See **id***.

We review a trial court's summary judgment de novo. ***Traveler's Ins. Co. v. Joachim***, 315 S.W.3d 860, 862 (Tex. 2010). Whether a court has subject matter jurisdiction is a question of law we must also review de novo. ***Wheelabrator Air Pollution Control, Inc. v. San Antonio***, 489 S.W.3d 448, 451 (Tex. 2016).

## Applicable Law

Governmental immunity protects municipalities like the City of Jacksonville from lawsuits for damages and from liability. *See **Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.***, 212 S.W.3d at 323-24. Municipalities have governmental immunity from suit unless the legislature has expressly waived immunity by statute. ***City of Houston v. Williams***, 353 S.W.3d 128, 134 (Tex. 2011). The Texas Constitution authorizes the legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." ***Tooke v. City of Mexia***, 197 S.W.3d 325, 343 (Tex. 2006) (quoting TEX. CONST. art. XI, § 13).

In the tort-claims context, the legislature has exercised that authority by enacting the TTCA, which defines specific functions as proprietary or governmental. *See Wasson Interests*, 489 S.W.3d at 438-39 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (West Supp. 2016)). The TTCA generally defines governmental functions as those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). It then provides a nonexhaustive list, enumerating thirty-six legislatively-defined governmental functions. *See id.*

The legislature also defined proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality," and the statute sets forth a nonexclusive list of three proprietary functions. *City of Houston v. Downstream Envtl.*, 444 S.W.3d 24, 33 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b)). Finally, the legislature specified that the "proprietary functions of a municipality do not include those governmental activities listed under subsection (a)." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(c)).

Although the TTCA was enacted with a tort-claims context in mind, the Texas Supreme Court saw "no reason its definitional guidance cannot or should not also apply in the contract-claims context." *Wasson Interests*, 489 S.W.3d at 439. "In determining the boundaries of immunity as it relates to whether a function is proprietary or governmental, therefore, courts should be guided . . . by the TTCA's treatment of the proprietary-governmental distinction." *Id*.

If a city's actions are classified as a governmental function by the TTCA, we have no discretion, regardless of the city's motives, to declare the action as proprietary. *City of Plano v. Homoky*, 294 S.W.3d 809, 814 (Tex. App.—Dallas 2009, no pet.). The TTCA specifically classifies "reservoirs," "waterworks," and "water and sewer service" as governmental functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11), (19), (32) (West Supp. 2016). The operation and maintenance thereof are likewise governmental functions. *See City of Houston*, 444 S.W.3d at 35. The enforcement of zoning ordinances and land-use restrictions is a valid exercise of a city's police powers and therefore a government function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § (a)(29); *Truong v. City of Houston*, 99 S.W.3d 204, 210-11 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Sefzik v. City of McKinney*, 198 S.W.3d 884, 898 (Tex. App.—Dallas 2006, no pet.) ("The police power may be loosely described as the power of the sovereign

to prevent persons under its jurisdiction from conducting themselves or using their property to the detriment of the general welfare.")

The introduction of a proprietary element to an activity designated by the legislature as governmental does not serve to alter its classification. *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 784 n.3 (Tex. App.—Texarkana 2004, pet. denied), *abrogated on other grounds by Tooke v. City of Mexia*, 197 S.W.3d 325 (2006)). In regard to mixed functions, the rule is that if any one component of a function is governmental, the entire function will be considered governmental. *See Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 357 (Tex. App.—San Antonio 2000, pet. denied) (citing Christopher D. Jones, Comment, *Texas Municipal Liability: An Examination of the State and Federal Causes of Action,* 40 BAYLOR L. REV. 595, 615 (1988)). In other words, "actions related to a designated government function are reclassified as governmental by the statute." *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied).

**Discussion**

In determining whether the City was performing a proprietary or governmental function, we focus on the specific acts underlying WIL's claims. *See Canario's, Inc. v. City of Austin*, No. 03-14-00455-CV, 2015 WL 5096650, at *3 (Tex. App.—Austin Aug. 26, 2015, pet. denied) (mem. op.) (citing *Hudson v. City of Houston,* 392 S.W.3d 714, 722–24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)).

The development and maintenance of a reservoir is an integral part of the "waterworks" to supply a safe water service to a city, which are all classified by the TTCA as governmental functions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11), (19), (32) (designating "waterworks," "dams and reservoirs," and "water and sewer service" as governmental functions). Moreover, the enforcement of a zoning ordinance to maintain these operations is also a government function. *See Id*. § 101.021(a)(29). The act forming the basis of WIL's claim is the City's use of its zoning ordinances and the lease restrictions to declare the lease of lots 43 and 46 on Lake Jacksonville terminated. This action was a proper use of the City's police power to (1) maintain a healthy and safe water supply for the general welfare of its residents; (2) protect local residents from the ill effects of urbanization and enhance their quality of life; and (3) preserve and maximize lease lot property values. *See Truong*, 99 S.W.3d at 210-11 (describing zoning's proper police power purpose and holding that city's suit to enforce deed restriction restricting commercial activity was akin to zoning, which is governmental function). Importantly, this action is consistent

5

with the Lake Jacksonville Rules and Regulations' objective of "preserving[ ] a safe and healthy municipal water supply, abundant recreational fishing opportunities, a variety of recreational boating opportunities, and property values for the improvements made upon lease lots for visitors, residents and community water users alike."

WIL contends that the City's actions were proprietary functions because it exercised discretion in leasing lots for profit on its reservoir. We disagree. This is similar to the plaintiff's contention in *City of San Antonio v. Butler*. There, the court explained "the city has discretion to perform or not to perform many activities in connection with its government functions." *Butler*, 131 S.W.3d at 178. "Neither that discretion nor the existence of a profit motive reclassifies one aspect of a government function into proprietary conduct." *Id*. The court explained that plaintiffs are not able to split aspects of a government operation into discrete functions and recharacterize certain of those functions as proprietary. *Id*.

In the instant case, WIL attempts to split the City's act of leasing the lake lots into a discrete proprietary function. But we have already concluded that the act forming the basis of the suit is the City's enforcement of the zoning ordinance and the lease restrictions, which is a legitimate exercise of the police power and a government function. In and of itself, a lease of real property by a city could be a proprietary function in certain circumstances. But when it is on real property used for a government purpose, it becomes part of that governmental function. *See Homoky*, 294 S.W.3d at 815, n.1. Here, the City's enforcement of the restriction serves the governmental function of preserving "a safe and healthy municipal water supply . . . and property values for the improvements made upon lease lots for visitors, residents and community water users. . . ."

We hold that the City's act of enforcing its ordinance to prevent commercial activity and terminate WIL's lease of lots 43 and 46 was part of its government function to maintain a safe and healthy water supply for its citizens and to preserve the property values of the lease lots. Therefore, without a waiver of immunity from suit, the trial court lacked jurisdiction over this suit. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323. Because that issue is dispositive in this appeal, we need not address the challenge to the no evidence summary judgment motion or any alternate grounds for this summary judgment. TEX. R. APP. P. 47.1.

### DISPOSITION

Having determined that the acts forming the basis of WIL's suit are part of the City of Jacksonville's governmental functions under the Texas Tort Claims Act, we *affirm* the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered December 9, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 9, 2016

NO. 12-13-00262-CV

**WASSON INTERESTS, LTD.,**
Appellant
V.
**CITY OF JACKSONVILLE, TEXAS,**
Appellee

Appeal from the 2nd District Court
of Cherokee County, Texas (Tr.Ct.No. 2011-05-0389)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **WASSON INTERESTS, LTD.,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*