Brian Hoyle, Justice
The City of Tyler appeals the trial court's order denying its plea to the jurisdiction in the suit filed against it by Carl Owens, Jr., Connie Owens, Michael Terry, and Sandi Terry (Appellees).[1] The City raises six issues in this interlocutory appeal. We reverse the trial court's order denying the City's plea, render judgment dismissing Appellees' claims against the City for lack of subject matter jurisdiction, and remand the cause for further proceedings consistent with this opinion.
BACKGROUND
In 1946, the City constructed Lake Tyler. The City owns the land underneath the lake and the land surrounding the lake. The City subdivided portions of the land surrounding the lake for the "construction of lake homes, buildings, and boat stalls."[2] In 1953, the City leased the three contiguous lots that are the subject of this suit-Lots 18, 19, and 20 of the Peninsula Subdivision-to Dr. Howard Bryant. After a series of transfers and lease amendments, the Owenses, Chatelains, and Terrys became the current lessees of Lots 18, 19, *42 and 20, respectively. The leaseholds do not extend into the lake itself.
However, the City generally allows the lessees to construct piers and boat houses. The Tyler Code of Ordinances, which is incorporated into the leases, requires that the lessee submit the proposed construction plan according to specific guidelines, pay a fee, and consent to an on-site physical inspection. If satisfied with the construction plan, the Water Production and Water Quality Manager for the Tyler Water Utilities Division (Manager) will issue a building permit.[3]
The Chatelains' lot is a pie-shaped lot in a cove with limited lake frontage. The Chatelains had an old pier and boathouse in place when they acquired the lease for Lot 19, but they removed them. On September 24, 2015, the Chatelains requested that the City approve their proposed plans for a new pier and boathouse and issue a construction permit.
On October 12, 2015, the Terrys, the lessees of Lot 20 whose leasehold shared the cove with the Chatelains, submitted a request for the City to authorize construction of a four-foot wide pier that would extend 160 feet into the cove. This pier would have essentially prevented the Chatelains' access to the lake. On October 23, 2015, the City denied the Terrys' request.
On October 22, 2015, the City sent a letter to the Owenses informing them of the Chatelains' request to approve a new pier and boathouse. The letter stated that the proposed boathouse would encroach on the Owenses' frontage, but "[u]nfortunately, due to the layout of the shoreline and of the other boathouses in this area, there is no other location for the [Chatelains'] proposed boathouse that will still provide access to the lake to the [Chatelains'] neighbor to the east on [the Terrys'] Lot 20." Carl Owens called the Manager and asked for a meeting. At the meeting, Owens expressed his discontent with the Chatelains' proposed pier and boathouse location.[4] Owens believed that the new boathouse would adversely affect his view of the lake and the value of his property.
Consequently, in an attempt to maximize the interested parties' access to the lake, the Manager reoriented the location of the Chatelains' boathouse on their proposed construction plan and asked that the Chatelains resubmit their request. Thereafter, the Owenses' attorney sent a letter to the Chatelains demanding that they refrain from constructing the boathouse, alleging that the boathouse would encroach upon the Owenses' lot line extending from their property into the lake, and that the City never allowed a neighboring property owner to construct a boathouse across this extended property line. The Chatelains resubmitted their request in accordance with the Manager's suggestions. On February 10, 2017, the City issued a construction permit to the Chatelains.
Subsequently, the Owenses filed suit against the City and the Chatelains, and the Terrys intervened. They each adopted the others' pleadings. They brought several claims, seeking to enjoin the Chatelains' construction of their boathouse, along with actual and exemplary damages, a declaratory judgment, injunctive relief, and attorney'
*43 s fees. The trial court granted an ex parte temporary restraining order against the City and the Chatelains, temporarily halting the Chatelains' construction of their pier and boathouse.
The City filed a plea to the jurisdiction, asserting that it had governmental immunity and it should be dismissed from the suit for lack of subject matter jurisdiction. The trial court thereafter held a hearing on Appellees' application for temporary injunction and the City's plea to the jurisdiction.[5] The trial court denied the temporary injunction and the City's plea to the jurisdiction.[6] The City filed this interlocutory appeal challenging the trial court's denial of its plea to the jurisdiction.[7]
GOVERNMENTAL IMMUNITY
In its first issue, the City contends that it performed a governmental function in determining the location of the Chatelains' boathouse on its lake and issuing the approval and construction permit. Consequently, the City's argument continues, it is entitled to governmental immunity. In its third issue, the City argues that its governmental immunity bars Appellees' contract claims against it. Appellees respond that the City performed a proprietary function, and in any event, the legislature waived the City's immunity.
Standard of Review
Governmental immunity from suit defeats a trial court's subject matter jurisdiction. See Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a trial court has subject matter jurisdiction is a question of law, which we review de novo. Id. at 226. Governmental immunity may be properly raised in a plea to the jurisdiction. Id.
When a plea to the jurisdiction challenges the existence of jurisdictional facts and the trial court holds an evidentiary hearing, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. See ids="9256802" index="3" url="https://cite.case.law/sw3d/133/217/#p225">id. If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. See ids="9256802" index="4" url="https://cite.case.law/sw3d/133/217/#p225">id. at 227-28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. Id. at 228.
Applicable Law
While often used interchangeably, sovereign immunity and governmental immunity involve two distinct concepts. Travis Cent. Appraisal Dist. v. Norman , 342 S.W.3d 54, 57-58 (Tex. 2011). Sovereign immunity refers to the state's immunity from suit and liability. Wichita Falls State Hosp. v. Taylor , 106 S.W.3d 692, 694 n.3 (Tex. 2003). In addition to protecting the state from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Id. Governmental immunity, on the other hand, protects political subdivisions of the state, including counties, cities, *44 and school districts, when they perform governmental functions. Id.
We conduct a two-step analysis for addressing the applicability of governmental immunity to a city's actions and deciding whether it has been waived. Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 435 (Tex. 2016). First, we determine the applicability of immunity in the first instance-by applying the governmental-proprietary dichotomy-and delineate its boundaries. See id. at 435, 437. Second, if immunity is applicable, then the judiciary defers to the legislature to waive such immunity. Id.
A city is not a freestanding sovereign with its own inherent immunity. Id. at 433. Municipal corporations exercise their broad powers through two different roles, proprietary and governmental. Id. (quoting Gates v. City of Dallas , 704 S.W.2d 737, 738-39 (Tex. 1986) ). When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity. Id. (quoting City of Houston v. Williams , 353 S.W.3d 128, 134 (Tex. 2011) ). Acts performed as part of a city's proprietary function do not implicate the state's immunity. Id.
Although the judiciary determines the applicability of immunity, the Texas Constitution authorizes the legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." Id. at 438 (quoting TEX. CONST. art. XI, § 13 (a) ).
In the tort-claims context, the legislature has exercised that authority by enacting the Texas Tort Claims Act (TTCA), which defines specific functions as proprietary or governmental. See id. at 438-39 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (West Supp. 2016) ). The TTCA generally defines governmental functions as those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." Id. § 101.0215(a). It then provides a nonexhaustive list, enumerating thirty-six legislatively-defined governmental functions. See id. The legislature also defined proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality," and the statute sets forth a nonexclusive list of three proprietary functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b). Finally, the legislature specified that the "proprietary functions of a municipality do not include those governmental activities listed under subsection (a)." Id. § 101.0215(c).
Although the TTCA was enacted with a tort-claims context in mind, the Texas Supreme Court saw "no reason its definitional guidance cannot or should not also apply in the contract-claims context." Wasson Interests , 489 S.W.3d at 439. "In determining the boundaries of immunity as it relates to whether a function is proprietary or governmental, therefore, courts should be guided ... by the TTCA's treatment of the proprietary-governmental distinction." Id. In examining whether the municipality was performing a proprietary or governmental function, we focus on the specific acts forming the basis of the plaintiffs' claims. See Wasson Interests, Ltd. v. City of Jacksonville , 513 S.W.3d 217, 221-22 (Tex. App.-Tyler 2016, pet. filed).
Discussion
On appeal, Appellees contend that the City's act in subdividing and leasing the lakefront residential lots is a proprietary function, citing pre-TTCA cases holding *45 that, under the common law, a city leasing its property acts in its proprietary capacity. See, e.g., City of Corpus Christi v. Gregg , 155 Tex. 537, 289 S.W.2d 746, 750 (1956) ; City of Port Arthur v. Young , 37 S.W.2d 385, 388-89 (Tex. Civ. App.-Beaumont 1931, writ ref'd). It is true that the Texas Supreme Court stated that the courts retain their function to determine whether governmental immunity applies under the common law. See Wasson Interests , 489 S.W.3d at 435. But the court further stated that we should be guided by the TTCA's definitions and classifications of government actions as governmental or proprietary. See id. at 439.
As part of their argument, Appellees contend that we must apply the general definitions of proprietary and governmental functions in the TTCA before deciding whether the action falls within one of the thirty-six legislatively defined governmental functions. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a), (b) (generally defining governmental and proprietary functions). The TTCA contains no such requirement. Moreover, as we have noted, the Texas Supreme Court has indicated that we should be guided by the TTCA's definitions and classifications of government actions as governmental or proprietary. See Wasson Interests , 489 S.W.3d at 439. The TTCA states that governmental functions "includ[e] , but [are] not limited to" the thirty-six functions on the laundry list. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (emphasis added). The legislature, through the TTCA, specifically classifies "reservoirs" and "waterworks" as governmental functions. Id. § 101.0215(a)(11), (19). The TTCA also classifies "building codes and inspection," "zoning, planning, and plat approval," and "engineering functions" as governmental functions. Id. § 101.0215(a)(28)-(30).
Additionally, Appellees contend that we must identify the legal authority upon which the City acted-here it argues the City's act of leasing its property surrounding the lake-and apply the dichotomy. However, we focus on the acts forming the basis of the suit. See City of Jacksonville , 513 S.W.3d at 221-22. As it pertains to the City's alleged role in this lawsuit, Appellees contend that the Manager's relocation of the Chatelains' pier and boathouse plans as part of their permit application, the issuance of the permit, and the subsequent construction authorized by the permit will create a nuisance and cause damages, such as a loss in property value. Therefore, we examine whether those actions are governmental or proprietary functions, not the City's earlier execution of the underlying lease. See id. ; see also City of Weslaco v. Borne , 210 S.W.3d 782, 792-93 (Tex. App.-Corpus Christi 2006, pet. denied) (holding that focus is on acts forming basis of suit, which was City's act in transferring property to State for operation of birding center resulting in tenants' eviction from mobile home park, not fact that land was earlier leased by City for mobile home park, and birding center relates to governmental functions such as "parks and zoos" and "recreational facilities").
The City's ordinances, which apply to the leases here, require that a tenant apply for and obtain a permit to construct a pier and boathouse on the City's lake. The Manager, an engineer, reviewed the application and utilized his engineering experience to alter the proposed location of the Chatelains' boathouse. Once satisfied, the Manager approved the construction and the City issued a building permit. These decisions are part of the City's engineering and planning functions, exercised through its building codes and inspection process, on its reservoir as part of the City's waterworks. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11), (19), (28)-(30).
*46 In sum, the heart of Appellees' claims against the City is its decision to approve the location of the Chatelains' pier and boathouse on the City's lake and the issuance of a construction permit, which resulted in their alleged damages. These actions are part of its governmental function to regulate land use on its property, specifically relating to the above-described legislatively defined governmental functions. Consequently, we hold that the City is entitled to governmental immunity absent a legislative waiver. See City of Jacksonville , 513 S.W.3d at 221-22 ; Borne , 210 S.W.3d at 792-93.
LOCAL GOVERNMENT CODE CHAPTER 271
In response to the City's first issue, Appellees contend that Local Government Code Chapter 271 is a legislative waiver of governmental immunity that applies to the leases in this case.
Standard of Review and Applicable Law
The legislature has waived governmental immunity as to certain contract claims. Local Government Code section 271.152 provides:
A local governmental entity that is authorized by statute to enter into a contract and that enters into a contract subject to this subchapter waives immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.
TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2016). A "[c]ontract subject to this subchapter" means "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.]" Id. § 271.151(2)(A) (West 2016).
While section 271 does not define the term "services," the Texas Supreme Court has held that, in the context of section 271.152, the term "is broad enough to encompass a wide variety of activities." Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C. , 442 S.W.3d 297, 302 (Tex. 2014) (quoting Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth. , 320 S.W.3d 829, 839 (Tex. 2010) ). "The term 'includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed.' " Church & Akin , 442 S.W.3d at 303 (quoting Kirby Lake , 320 S.W.3d at 839 ). In other words, "there must be some obligation to perform." Kirby Lake , 320 S.W.3d at 839.
The agreement to provide services to the governmental unit "need not be the primary purpose of the agreement." Byrdson Servs., LLC v. S.E. Tex. Reg'l Planning Comm'n , 516 S.W.3d 483, 485 (Tex. 2016). However, for the contract to trigger the waiver in section 271.152, the benefit received by the local governmental entity must be direct and unattenuated. Id. "[T]he absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity." Church & Akin , 442 S.W.3d at 305. Yet in some instances a party may agree to provide services in exchange for something other than payment. See ids="6908054" index="44" url="https://cite.case.law/sw3d/442/297/#p302">id.
Discussion
"Generally, contracts for land leases ... are not covered by Chapter 271." Wasson Interests , 489 S.W.3d at 437. Appellees nevertheless argue that the leases require them to perform several "services" that waive the City's governmental *47 immunity under Chapter 271.[8] The lease requires that Appellees (1) prevent any violation of environmental laws and regulations with respect to their leaseholds, (2) indemnify and defend the City from all claims and damages arising from such violations, (3) satisfy any judgments or penalties due against the City in these matters, (4) remediate any environmental contamination event and restore the property to its condition prior to the event, (5) provide testing reports and other proof demonstrating an effective remediation and restoration, and (6) provide notice to the City of any alleged, suspected, or threatened violation of environmental laws and regulations of which they become aware.
With respect to the duty to indemnify the City, Appellees cite to cases holding that indemnity provisions in contracts can qualify as "services," typically in construction cases where a contractor has a duty to indemnify the governmental entity for the contractor's mistakes in a government construction contract. See, e.g., City of El Paso v. High Ridge Const., Inc. , 442 S.W.3d 660, 670 (Tex. App.-El Paso 2014, pet. denied). The governmental unit in those cases received a direct and unattenuated benefit from the contractor that was closely related to the contract-indemnity-for damages suffered by third parties for the contractor's negligence pursuant to a construction contract. See id. Although the Texas Supreme Court has not expressly addressed whether an indemnity provision is a service, it has stated as follows:
We do not decide whether the warranty and indemnity provisions, standing alone, would qualify as the provision of services ... for purposes of chapter 271. This result would be somewhat odd, in that contractual provisions intended to shield the [governmental entity] from liability would have the effect of waiving immunity, the purpose of which is to protect the public treasury from liability claims.
Byrdson Servs. , 516 S.W.3d at 486.
Irrespective of whether an indemnity provision could qualify as a "service" under Chapter 271, we hold that the provisions at issue here are not "services" as that term is used in the statute. The leases do not require the City to pay for these "services," a factor weighing against waiver. See Church & Akin , 442 S.W.3d at 305 ; see also TEX. LOC. GOV'T CODE ANN. § 271.153(a)(1) (West 2016) (limiting damages to balance due and owed by City). Rather, they are obligations imposed on the lessees arising only in the event that a contingency occurs related to environmental contamination on the property. We recognize that the "services" at issue need not be the primary purpose of the contract. But even if these provisions could provide a direct benefit to the City, they relate to hypothetical environmental claims where the benefits to the City are too attenuated to constitute a waiver of its governmental immunity under these facts. See Church & Akin, 442 S.W.3d at 304-05 ; see E. Houston Estate Apartments, L.L.C. v. City of Houston , 294 S.W.3d 723, 736 (Tex. App.-Houston [1st Dist.] 2009, no pet.) (holding that tangential benefit of developer's construction of low income housing for residents was too indirect and attenuated to constitute "service" under Chapter 271 considering central purpose of agreement between City and developer was to provide loan of money).
Accordingly, for all the above reasons, the City's first and third issues are sustained.
TORT CLAIMS
In its second issue, the City contends that the trial court erroneously denied *48 its plea to the jurisdiction on the Owenses' and Terrys' tort claims against it, because Appellees have abandoned those claims. Appellees concede in their brief that they no longer pursue any tort claims against the City. Accordingly, we hold that Appellees abandoned these claims, and we need not examine whether such claims defeat the City's immunity. See TEX. R. CIV. P. 165 ; TEX. R. APP. P. 47.1.
The City's second issue is sustained.
DECLARATORY JUDGMENT
In its fourth issue, the City contends that its governmental immunity bars Appellees' declaratory judgment claims against it. The Uniform Declaratory Judgment Act (UDJA) does not create or augment a trial court's subject matter jurisdiction-it is "merely a procedural device for deciding cases already within a court's jurisdiction." Tex. Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam). The UDJA also is not a general waiver of governmental immunity. Tex. Parks & Wildlife Dep't v. Sawyer Trust , 354 S.W.3d 384, 388 (Tex. 2011). Moreover, a claimant's couching his requested relief in terms of declaratory relief does not alter the underlying nature of the suit. Id.
The UDJA does provide a narrow waiver of immunity for claims challenging the validity or constitutionality of ordinances or statutes. See TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2015); see also Sawyer Trust , 354 S.W.3d at 388 ; City of El Paso v. Heinrich , 284 S.W.3d 366, 373 n.6 (Tex. 2009). However, the UDJA does not waive governmental immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law such as a municipal ordinance. See Sefzik , 355 S.W.3d at 621 (citing Heinrich , 284 S.W.3d at 372-73 ); Abbott v. G.G.E. , 463 S.W.3d 633, 653 n.14 (Tex. App.-Austin 2015, pet. denied).
None of the parties challenge the validity or constitutionality of any ordinance or statute. Rather, they seek to determine and enforce their respective rights under the applicable ordinances, statutes, and the common law. Accordingly, the City's governmental immunity defeats Appellees' UDJA claims. See Sefzik , 355 S.W.3d at 621.
The City's fourth issue is sustained.
INJUNCTIVE RELIEF
In its fifth issue, the City contends that its governmental immunity bars Appellees' claims for injunctive relief. Absent a legislative waiver, governmental immunity bars suits seeking injunctive relief against governmental entities. See id. at 619-20 (citing Heinrich , 284 S.W.3d at 380 ). We have held that the City has governmental immunity and that it was not waived by the legislature. Consequently, Appellees cannot pursue their claims for injunctive relief against the City. See ids="7301546" index="62" url="https://cite.case.law/sw3d/284/366/">id.
The City's fifth issue is sustained.
THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW
In its sixth issue, the City argues that the trial court erred in making its findings of fact and conclusions of law. Those findings and conclusions are related to the temporary injunction portion of the trial court's hearing and the merits of the underlying claims, not the City's plea to the jurisdiction that forms the basis of this limited interlocutory appeal. The City acknowledged in its briefing that it primarily addressed the findings and conclusions to prevent waiving any challenges to those issues depending on our disposition of this appeal, and at oral argument, the City conceded that we need not address this *49 issue which is outside the authorized scope of this interlocutory appeal. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). Therefore, we need not address issue six. See TEX. R. APP. P. 47.1.
DISPOSITION
Having sustained the City's first, second, third, fourth, and fifth issues, we reverse the order of the trial court denying the City's plea to the jurisdiction, render judgment that the City be dismissed from the suit, and remand for further proceedings between the remaining parties to this suit consistent with this opinion.

As part of their suit, Appellees also sued Kourt Chatelain and Jamie Chatelain, who are not parties to this interlocutory appeal.

See Tyler , Tex. , Code of Ordinances , ch. 19, art. VI, § 19-130 (2016).

See Tyler , Tex. , Code of Ordinances , ch. 19, art. VI, § 19-205(d) (2016).

On December 11, 2015, the Owenses submitted a permit request to add a swim deck to the existing boathouse on the side nearest the Chatelains' proposed boathouse, even though there are no boathouses on the other side of the Owenses' boathouse. A lake supervisor replied that the Owenses should seek to place the swim deck on the other side of their boat house to prevent congestion. The Owenses did not pursue the construction of the swim deck.

Prior to the hearing, Appellees joined two city employees as defendants, who also filed a plea to the jurisdiction. The trial court declined to rule on the immunity of those employees, and they are not parties to this appeal.

The trial judge also recused himself and transferred the case to the Smith County Court at Law Number 3.

Texas law authorizes an interlocutory appeal from an order denying a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2016). No party to this suit appealed the trial court's denial of the temporary injunction.

None of the other elements required under section 271.151 are in dispute.