# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE CITY OF TYLER, APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 3* |
| *CARL OWENS, JR., ET AL, APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION ON REMAND*

The Texas Supreme Court remanded this case to us to determine whether the City of Tyler acted in its governmental or proprietary capacity when it leased property on Lake Tyler to Carl Owens, Jr., Connie Owens, Michael Terry, and Sandi Terry (the Lessees) in light of ***Wasson Interests, Ltd. v. City of Jacksonville***, 559 S.W.3d 142 (Tex. 2018) ("***Wasson II***").[1] Because we conclude that the City leased the property in its proprietary capacity, we affirm the trial court's order overruling the City's plea to the jurisdiction and remand for further proceedings consistent with this opinion.

## BACKGROUND

In 1946, the City constructed Lake Tyler. The City owns the land underneath the lake and the land surrounding the lake. The City subdivided portions of the land surrounding the lake for the construction of lake homes, buildings, and boat stalls. In 1953, the City leased the three contiguous lots that are the subject of this suit—Lots 18, 19, and 20 of the Peninsula Subdivision— to Dr. Howard Bryant. After a series of transfers and lease amendments, the Owenses, Kourt and Jamie Chatelain, and the Terrys became the current lessees of Lots 18, 19, and 20, respectively. The leaseholds do not extend into the lakebed.

---

[1] *See **Owens v. City of Tyler***, 564 S.W.3d 850, 851 (Tex. 2018) (per curiam).

However, the City generally allows the lessees to construct piers and boat houses. The Tyler Code of Ordinances, which is incorporated into the leases, requires that the lessee submit the proposed construction plan according to specific guidelines, pay a fee, and consent to an on-site physical inspection. If satisfied with the construction plan, the Water Production and Water Quality Manager for the Tyler Water Utilities Division (Manager) will issue a building permit.

The Chatelains' lot is a pie-shaped lot in a cove with limited lake frontage. The Chatelains had an old pier and boathouse in place when they acquired the lease for Lot 19, but they removed them. On September 24, 2015, the Chatelains requested that the City approve their proposed plans for a new pier and boathouse and issue a construction permit.

On October 12, 2015, the Terrys, the lessees of Lot 20 whose leasehold shared the cove with the Chatelains, submitted a request for the City to authorize construction of a four-foot wide pier that would extend 160 feet into the cove. This pier would have essentially prevented the Chatelains' access to the lake. On October 23, 2015, the City denied the Terrys' request.

On October 22, 2015, the City sent a letter to the Owenses informing them of the Chatelains' request to approve a new pier and boathouse. The letter stated that the proposed boathouse would encroach on the Owenses' frontage, but "[u]nfortunately, due to the layout of the shoreline and of the other boathouses in this area, there is no other location for the [Chatelains'] proposed boathouse that will still provide access to the lake to the [Chatelains'] neighbor to the east on [the Terrys'] Lot 20." Carl Owens called the Manager and asked for a meeting. At the meeting, Owens expressed his discontent with the Chatelains' proposed pier and boathouse location. Owens believed that the new boathouse would adversely affect his view of the lake and the value of his property.

Consequently, in an attempt to maximize the interested parties' access to the lake, the Manager reoriented the location of the Chatelains' boathouse on their proposed construction plan and asked that the Chatelains resubmit their request. Thereafter, the Owenses' attorney sent a letter to the Chatelains demanding that they refrain from constructing the boathouse, alleging that the boathouse would encroach upon the Owenses' lot line extending from their property into the lake, and that the City never allowed a neighboring property owner to construct a boathouse across this extended property line. The Chatelains resubmitted their request in accordance with the Manager's suggestions. On February 10, 2017, the City issued a construction permit to the Chatelains.

Subsequently, the Owenses filed suit against the City and the Chatelains, and the Terrys intervened. They each adopted the others' pleadings. They brought several claims, seeking to enjoin the Chatelains' construction of their boathouse, along with actual and exemplary damages, a declaratory judgment, injunctive relief, and attorney's fees. The trial court granted an ex parte temporary restraining order against the City and the Chatelains, temporarily halting the Chatelains' construction of their pier and boathouse.

The City filed a plea to the jurisdiction, asserting that it had governmental immunity and it should be dismissed from the suit for lack of subject matter jurisdiction. The trial court thereafter held a hearing on the Lessees' application for temporary injunction and the City's plea to the jurisdiction.[2] The trial court denied the temporary injunction and the City's plea to the jurisdiction.[3] The City filed this interlocutory appeal challenging the trial court's denial of its plea to the jurisdiction.[4]

## PLEA TO THE JURISDICTION

In its first issue, the City contends that *Wasson II* does not apply to this case. In its second issue, the City argues that even if *Wasson II* applies to this case, the Lessees failed to plead and prove that the City engaged in proprietary actions in entering their leases. The City also argues in its second issue that it acted in its governmental capacity. Because these issues are related, we address them together.

### Standard of Review

Governmental immunity from suit defeats a trial court's subject matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Governmental immunity may be properly raised in a plea to the jurisdiction. *Id.* at 226. We review a trial court's ruling on a plea to the jurisdiction de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

When a plea to the jurisdiction challenges the existence of jurisdictional facts and the trial court holds an evidentiary hearing, the reviewing court considers relevant evidence submitted by

---

[2] Prior to the hearing, the Lessees joined two city employees as defendants, who also filed a plea to the jurisdiction. The trial court declined to rule on the immunity of those employees, and they are not parties to this appeal.

[3] The trial judge also recused himself and transferred the case to the Smith County Court at Law Number 3.

[4] No party to this suit appealed the trial court's denial of the temporary injunction.

the parties when necessary to resolve the jurisdictional issues raised. *See Miranda*, 133 S.W.3d at 226. We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 633 (Tex. 2015). If the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder. *Id.* If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law. *Id.*

**Applicable Law**

"Municipal corporations exercise their broad powers through two different roles; proprietary and governmental." *Wasson II*, 559 S.W.3d at 146 (quoting *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex. 1986)). Governmental functions "are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (West 2019). Proprietary functions are those "that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b).

The governmental/proprietary dichotomy recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (*Wasson I*). "Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations." *Gates*, 704 S.W.2d at 739.

This governmental/proprietary dichotomy applies in the contract-claims context just as it does in the tort-claims context. *See Wasson I*, 489 S.W.3d at 439. To determine whether a municipality is shielded with governmental immunity in a breach of contract claim against it, the proper inquiry is whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract. *Wasson II*, 559 S.W.3d at 149. Stated differently, the focus belongs on the nature of the contract, not the nature of the breach. *Id.* If a municipality contracts in its proprietary capacity but later breaches that contract for governmental reasons, immunity does not apply. *Id.*

4

Although we apply the governmental/proprietary dichotomy as a matter of common law, the Texas Constitution authorizes the Legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." TEX. CONST. art. XI, § 13. Exercising that authority, the Legislature has defined and enumerated governmental and proprietary functions for the purposes of determining whether immunity applies to tort claims against a municipality. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. Even though these statutory definitions and designations apply expressly to tort claims, they also "aid our inquiry" when applying the dichotomy in the contract-claims context. *Wasson II*, 559 S.W.3d at 147–48. We thus consider both the statutory provisions and the common law in determining whether a city's contractual conduct is governmental or proprietary. *Id.*

In determining whether the City contracted in its governmental or proprietary capacity, we consider whether: (1) the City's act of entering into the leases was mandatory or discretionary, (2) the leases were intended to benefit the general public or the City's residents, (3) the City was acting on the State's behalf or its own behalf when it entered the leases, and (4) the City's act of entering into the leases was sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary. *Id.* at 150.

With regard to the second factor, the Texas Supreme Court explained that a "city's proprietary contracts will often benefit some nonresidents, and its governmental contracts will often benefit some residents, but whether a contract *primarily* benefits one or the other will often indicate whether it is proprietary or governmental." *Id.* at 151. Concerning the fourth factor, the Court elaborated that "[t]he fact that a city's proprietary action 'touches upon' a governmental function is insufficient to render the proprietary action governmental." *Id.* at 153. "Instead, a city's proprietary action may be treated as governmental only if it is essential to the city's governmental actions." *Id.* In some cases, some factors may point to one result while others point to the opposite result. *Id.* at 154. In such cases, we consider immunity's nature and purpose and the derivative nature of a city's access to that protection. *Id.*

**Applicability of *Wasson II***

Despite the Texas Supreme Court's instruction to us to reconsider our prior opinion in light of *Wasson II*, the City contends that *Wasson II* does not apply to this case. The City instead argues that we must identify the operative facts that form the basis of the Lessees' claims and

determine whether those operative facts arose from a proprietary action by the City. The City contends that the case arose from a governmental function, specifically its management of Lake Tyler's recreational use by issuing a building permit for a resident to construct a boathouse on a City-owned lakebed in the City-owned reservoir.

The City justifies this analysis by distinguishing the facts in *Wasson* from the facts in this case, reasoning that the claims there were directly connected to, or arose out of, Jacksonville's lease with the tenant and concerned the leased premises and activities governed by the lease. *See id.* at 145-46. For example, the City points out that in *Wasson* the suit was based on Wasson's alleged violation of its lease with Jacksonville that required it to refrain from conducting commercial activity on the leased premises, Jacksonville sent eviction notices for the lease violations, and Wasson filed suit for improper eviction and termination of the lease. *See id.*

In contrast, the City points to the trial court's unchallenged fact findings here that (1) the lake and the land under the lake are not part of the leaseholds, (2) the lessees have no right to a boathouse, access to the lake, or a view of the lake, and (3) those matters lie within the City's sole discretion and do not result in a government "taking." The City's argument continues that these factual findings show that this suit has no connection to the City's contracting conduct in leasing lake lots to the lessees. The City argues essentially that this suit is unrelated to the leases and relates only to its governmental action in issuing the permit to the Chatelains. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (stating that a municipality is liable for damages *arising from* its governmental functions in accordance with the TTCA's provisions and statutory scheme). Accordingly, the City concludes, *Wasson II* does not apply to the Lessees' claims. We disagree.

The City's arguments require us to focus on its actions that gave rise to suit, which the Texas Supreme Court held is the incorrect analysis. *See id.* at 149. Instead, in a breach of contract suit against a municipality, we are required to focus on the nature of the contract when it was made, not the City's actions that formed the basis of the lawsuit, i.e., the breach. *See id.*

The Lessees filed breach of contract claims alleging that the City breached their leases when it issued the permit to the Chatelains. In response, the City filed a plea to the jurisdiction alleging that it had governmental immunity from those claims. Although the trial court found that the lakebed upon which the piers and boathouses are built is not part of the parties' leaseholds, the claims brought by the Lessees against the City exist only because of their landlord-tenant contractual relationship. Without this relationship, the Lessees would not have filed suit against

6

the City for breach of their leases when it issued the permit to the Chatelains. Therefore, the governmental/proprietary dichotomy described in *Wasson I*, along with the analytical framework announced in *Wasson II*, apply to this suit. *See id.* The City's first issue is overruled.

### Sufficiency of the Lessees' Pleadings and Proof

The City alleges as part of their second issue that the Lessees failed to meet their burden to plead and prove facts that affirmatively establish jurisdiction. We disagree. In relevant part, Carl Jr. and Connie Owens alleged in their pleadings that the City breached their leases when it acted in contravention of an established custom, practice, and usage, along with violations of its ordinances and the Lake Tyler rules and regulations incorporated into their lease. Specifically, they aver that the City breached the lease when it issued a permit to the Chatelains to construct their boathouse in an area of the lake over which the Owenses had exclusive control and possession. Michael and Sandi Terry similarly alleged in their petition that the leases incorporate various rules, regulations, and ordinances that govern the leaseholders' right to access the lake, make recreational use of the lake, and to construct piers and boathouses. They also allege that one of the rules and regulations that is part of the contract is an agreement that boat houses and piers are not to be located so as to cross the property lines of an adjacent leaseholder's lot as if that line extended into the lake. Furthermore, they also allege that the Chatelains' boathouse would constitute a navigational hazard in contravention of the City's rules and regulations pertaining to Lake Tyler. The Lessees each adopted the other's pleadings. The Lessees asserted in their petitions that the City acted in its proprietary capacity, albeit specifically in their negligence claim sections that they have now abandoned. But when reviewing the plea to the jurisdiction, we construe the pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *See Miranda*, 133 S.W.3d at 226.

In accordance with the allegations in their pleadings, at the hearing, the City's Utilities and Public Works Managing Director testified that the City had a general policy and custom of locating boathouses and piers between the lot lines of an individual lease as if the lease lot lines extended into the lake, but there were some variances. Various other tenants, at least one of which was a local realtor that specialized in Lake Tyler lakefront transactions, testified and confirmed that this was the City's longstanding practice. Although there were the aforementioned variances, the Director also testified that the Terrys approached him and complained that the City issued a boathouse construction permit to the tenant at Lot 21 next to them that would cut off their access

to the lake and encroached on their leasehold. The Director testified that he approached Lot 21's tenant and asked them to move their boathouse to accommodate the Terrys. Lot 21's tenant agreed, provided that the City would pay to remove the pilings that had already been placed pursuant to the permit. The City agreed and paid $16,000.00 to relocate the pilings for Lot 21's tenants.

The Lessees' pleadings concerning the breach of contract action, along with the City's plea to the jurisdiction, raised the jurisdiction issue by way of the dichotomy's application to governmental immunity, the resolution of which determines whether the trial court has jurisdiction. The evidence developed at the hearing provides us with facts that assist in our determination of whether the contract is governmental or proprietary in nature. Here, we hold the Lessees sufficiently pleaded the relevant facts to support jurisdiction, and the trial court had sufficient evidence to conclude that the Lessees met their burden to establish jurisdiction. Accordingly, this portion of the City's second issue is overruled.

**Lakefront Leases to Private Parties are Proprietary Functions**

Next, we apply the *Wasson II* framework to determine whether the lakefront property leases were made in the City's governmental or proprietary capacity. But first, the City contends that its conduct falls within one of the legislatively enumerated governmental functions, namely "recreational facilities, including but not limited to swimming pools, beaches, and marinas." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(23). We disagree. This function does not include the lease of lakefront property to private parties, who then construct private homes, piers, and boathouses. *See id.* As further support, the City points to the recreational-use statute, which defines "recreation" to mean activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, including bird-watching, waterskiing and other water sports, and "any other activity associated with enjoying nature or the outdoors." *Id.* § 75.001 (West 2017). The recreational-use statute was enacted to encourage landowners, both governmental entities and private parties, to open their land to the public for recreational use by limiting their potential liability for injury. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 626 (Tex. 2009). This statute serves a different purpose from determining whether a city's action is governmental or proprietary for immunity purposes, and we conclude its definitions are inapplicable to our inquiry here.

Here, as in *Wasson II*, because the Tort Claims Act does not enumerate leasing property as a governmental or a proprietary function, we must apply the general definitions and the above described four-factor test. First, the City's decision to lease its lakefront property to the Lessees

8

was discretionary. "To carry out a municipal purpose, the municipality *may . . .* lease . . . property located in or outside the municipality," but nothing requires it to do so. TEX. LOC. GOV'T CODE ANN. § 51.015(a) (West 2008) (emphasis added). A city can control its contractual liabilities by refusing to enter into the contract. *Wasson II*, 559 S.W.3d at 150. Here, as in *Wasson II*, the City had no obligation to lease the lakefront lots to private parties. *See id.* at 151. "It could have left the land unused, used it strictly for the City's purposes, or designated it as parks, a golf course, or some other form of recreational activity." *Id.* Instead, it chose to generate revenue by granting long-term leases to private parties. *Id.* We thus conclude that the City exercised its discretion when it executed the leases.

Second, as in *Wasson II*, although non-residents certainly benefited from the City's decision to lease its lakefront property, the record indicates the City's primary objective was to develop the lake and that leasing the properties raised funds for the City's budget. As the Lessees point out, the City leased the lots to Dr. Bryant in 1953 for $3,000.00, which was not an insignificant amount of money at that time. As existing leases were assigned and new leases came into effect over the years, the City raised the annual rent. We also note that the City collects rent on approximately 400 lake lots at Lake Tyler. In any event, the very nature of the private lease agreements necessarily excludes the general public from benefitting from the premises. Consequently, the City entered into the leases primarily to benefit its own residents, not the general public. *See id.*, at 151–52.

With respect to the third factor, we conclude the City acted on its own behalf by leasing its lakefront property, not on behalf of the State. The fact that the City's decision to lease the property was entirely discretionary and primarily benefitted the City's residents supports this conclusion, and we find no facts to counter it. *See id.* at 152 (quoting *Wasson I*, 489 S.W.3d at 436 ("When a city performs discretionary functions on its own behalf, it ceases to derive its authority—and thus its immunity—from the state's sovereignty. Such proprietary functions, therefore, do not stem from the root of immunity that is 'the people,' and lacking that common root, they cannot be performed as a branch of the state.") (internal citations omitted)).

As to the fourth factor, leasing the lakefront property was not "essential" to the City's governmental operation or maintenance of the lake that served as the City's reservoir. *See id.* at 153. Here, all four relevant factors establish that the City was performing a proprietary function when it leased its lakefront property to the Lessees. The discretionary decision to lease lake lots

to private parties that primarily benefits those parties is proprietary. It might be argued that the City breached the contract for a governmental reason—issuing a permit—which is often a governmental function. But as the Supreme Court explained, "[i]f a municipality contracts in its proprietary capacity but later breaches that contract for governmental reasons, immunity does not apply." *Id.* at 149. As a result, governmental immunity does not protect the City against the Lessees' suit for breach of the lease agreements. *See id.* at 154. Given our disposition of this argument, we do not address the parties' contentions about waiver of immunity under the Local Government Contract Claims Act. *See* TEX. R. APP. P. 47.1; *Tri-Stem, Ltd. v. City of Houston*, 566 S.W.3d 789, 798 (Tex. App.—Houston [14th Dist.] 2018, pet. filed). Accordingly, the City's second issue is overruled.

## Declaratory Judgments

Because of our disposition on remand, we must also address some of our holdings in our prior opinion. *See City of Tyler v. Owens*, 564 S.W.3d 38 (Tex. App.—Tyler 2017), *judgm't vacated*, 564 S.W.3d 850 (Tex. 2018). We held in our prior opinion that the City had governmental immunity, which barred the Lessees' declaratory judgment claims. *Id.* However, we have held on remand that the City acted in its proprietary capacity in leasing the lake lots. When a city acts in its proprietary capacity, it is subject to the same duties and liabilities as those incurred by private persons and corporations. *Gates*, 704 S.W.2d at 739. Therefore, the Lessees' declaratory judgment claims are not barred by governmental immunity. *See City of Georgetown v. Lower Colorado River Auth.*, 413 S.W.3d 803, 806, 814 (Tex. App.—Austin 2013, pet. dism'd) (holding that because City acted in proprietary capacity, it had no governmental immunity from electricity supplier's declaratory judgment action seeking determination of parties' rights and obligations under the agreement).

## Injunctive Relief

Similarly, we held in our prior opinion that the City's governmental immunity barred the Lessees' claims for injunctive relief. *See Owens*, 564 S.W.3d at 48. As with the Lessees' claims for declaratory relief, since the City acted in its proprietary capacity, injunctive relief is a possible remedy. *See Wasson II* 559 S.W.3d at 146, 154 (holding suit for declaratory and injunctive relief may proceed against City because it acted in proprietary capacity when leasing lakefront property); *see also Gates*, 704 S.W.2d at 739 (citing *Cone v. City of Lubbock*, 431 S.W.2d 639 (Tex. Civ.

App.—Amarillo 1968, writ ref'd n.r.e.) (holding city liable for damages for improper issuance of injunctive relief where litigation involved proprietary activity)).

## Findings of Fact and Conclusions of Law

In our prior opinion, the City challenged the trial court's findings of fact and conclusions of law. *See Owens*, 564 S.W.3d at 48-49. We held that we did not need to address that issue because those findings were related to the temporary injunction portion of the trial court's hearings and the merits of the underlying claims. *Id.* The City acknowledged that this issue is outside the authorized scope of this interlocutory appeal. *Id.* We need not disturb our disposition of this issue.

## Tort Claims

Finally, we held in our prior opinion that the Lessees abandoned any tort claims against the City. *Id.* at 48. As with the City's issue regarding the trial court's findings of fact and conclusions of law, we need not vary from our holding in the prior opinion.

## DISPOSITION

Having overruled the City's two issues, we *affirm* the order denying the City's plea to the jurisdiction and remand the case to the trial court for further proceedings consistent with this opinion.

**BRIAN HOYLE**
Justice

Opinion delivered July 10, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 10, 2019**

**NO. 12-16-00128-CV**

**THE CITY OF TYLER,**
Appellant
V.
**CARL OWENS, JR., ET AL,**
Appellee

Appeal from the County Court at Law No. 3
of Smith County, Texas (Tr.Ct.No. 65,094-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this court that there was no error in the order of the court below.

It is ORDERED, ADJUDGED and DECREED by this Court that the trial court's order overruling the City of Tyler's plea to the jurisdiction is **affirmed;** the cause is **remanded** to the trial court for further proceedings consistent with this opinion; all costs of this appeal are hereby adjudged against the Appellant, **THE CITY OF TYLER;** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*