

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00158-CV

---

IN THE INTEREST OF D.K.P., A CHILD

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 90586-D-FM, Honorable Pamela Cook Sirmon, Presiding

---

September 13, 2019

## MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

This appeal concerns a grandparent's standing to bring a suit affecting the parent-child relationship (SAPCR). K.J.P., the biological grandmother of D.K.P., appeals the trial court's order granting the motion to dismiss of D.K.P.'s adoptive mother, appellee K.K.R. (the mother).[1] We will reverse the dismissal order and remand the case to the trial court for further proceedings.

---

[1] We do not identify the parties by name to protect the privacy of the child. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018).

## Background

D.K.P. was born in December 2007. The child's biological mother is B.P., the grandmother's youngest daughter and the mother's sister. The parental rights of B.P. and D.K.P.'s father were terminated soon after D.K.P.'s birth. D.K.P. was placed in the mother's custody and in 2010 the mother adopted the child.

In August 2017 the grandmother filed an original suit involving conservatorship, possession, and access to a child. In her live petition, under a paragraph heading entitled "Conservatorship" the grandmother alleged she should be appointed the sole managing conservator of D.K.P. because the mother's appointment as sole managing conservator would not be in the child's best interest and would significantly impair the child's physical health or emotional development. She specifically alleged the mother had engaged in a history or pattern of child neglect. With the apparent intention of rebutting the parental presumption, the grandmother alleged the mother "voluntarily relinquished actual care, control and possession of the child to a nonparent for a period of one year or more, a portion of which was within ninety days preceding the date of intervention in or filing of the suit and the appointment of the nonparent as sole managing conservator is in the best interest of the child."[2]

---

[2] *See* TEX. FAM. CODE ANN. § 153.373 (West Supp. 2018) (providing rebuttal of presumption that parent should be appointed managing conservator if parent has voluntarily relinquished actual care, control, and possession of child to nonparent for a period of one year or more, a portion of which was within 90 days of filing suit).

As a ground for standing to bring the SAPCR, the grandmother alleged that she "is a person, other than a foster parent, who has had actual care, control and possession of the child for at least six months ending no more than 90 days before suit was filed."[3]

On November 3, 2017, the trial court conducted an evidentiary hearing on the grandmother's request for temporary orders. After hearing evidence the court denied the request. By instrument filed on December 8, the grandmother requested trial by jury. On March 1, 2018, the mother filed a "motion to dismiss" requesting dismissal of the grandmother's case because she lacked standing to seek conservatorship. On March 8, the trial court conducted an evidentiary hearing on the mother's motion. Only the mother and the grandmother testified. On April 12, the trial court signed an order rendering dismissal of the grandmother's suit.

## Analysis

The grandmother's sole issue on appeal is whether, by virtue of Family Code section 102.003(a)(9), she had standing to bring a SAPCR seeking conservatorship of D.K.P.

When a defendant's jurisdictional plea challenges the existence of jurisdictional facts with supporting evidence the standard of review mirrors that of a traditional summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark,* 544 S.W.3d 755, 771 (Tex. 2018). Thus "'to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction.'" *Id.* (quoting *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 221 (Tex. 2004)). When an appellate

---

[3] *See* TEX. FAM. CODE ANN. § 102.003(a)(9) (West 2019).

court reviews the denial of a plea to the jurisdiction, and evidence was presented to the trial court, the appellate court reviews de novo whether the evidence raises a material issue of fact. *Marino v. Lenoir,* 526 S.W.3d 403, 405 n.5 (Tex. 2017) (citing *Miranda,* 133 S.W.3d at 221, 227-28)); *see also City of Tyler v. Owens,* 564 S.W.3d 38, 44 (Tex. App.— Tyler 2017) (mem. op.) (noting trial court conducted evidentiary hearing on plea to jurisdiction and citing *Miranda* for rule, "If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied")*, vacated on other grounds,* 564 S.W.3d 850 (Tex. 2018) (per curiam); *City of Laredo v. Varela,* No. 04-10-00619-CV, 2011 Tex. App. LEXIS 3485 (Tex. App.—San Antonio May 11, 2011, pet denied) (mem. op.) (like procedure).

Standing is a necessary component of subject-matter jurisdiction, without which a court lacks authority to hear a case. *In re H.S.,* 550 S.W.3d 151, 155 (Tex. 2018). Standing is simply the right to be heard; it does not mean a party also has a right to prevail. *Id.; In re S.S.J.-J.,* 153 S.W.3d 132, 138 (Tex. App.—San Antonio 2004, no pet.). Because standing to bring a SAPCR is provided by statute, we analyze the standing issue according to the statutory framework. *In re K.K.T.,* No. 07-11-00306-CV, 2012 Tex. App. LEXIS 6906, at *6 (Tex. App.—Amarillo Aug. 17, 2012, no pet.) (mem. op.); *In re Fountain,* No. 01-11-0198-CV, 2011 Tex. App. Lexis 3327, at *11 (Tex. App.—Houston [1st Dist.] May 2, 2011, orig. proceeding) (mem. op. on reh'g.) (citing *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984)).

As noted the grandmother pled standing under Family Code section 102.003(a)(9) which provides, "An original suit may be filed at any time by: a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six

months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9). To compute the time necessary for standing under section 102.003(a)(9), "the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." TEX. FAM. CODE ANN. § 102.003(b).

The issue of the grandmother's standing was tried prior to our supreme court's decision in *In re H.S.*; thus, the parties and the trial court lacked the benefit of that decision. In *In re H.S.,* the court explained that for purposes of standing under section 102.003(a)(9), a nonparent has "actual care, control, and possession of the child" if, for the required six-month period the nonparent occupied a parent-like role by "(1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance and direction similar to that typically exercised on a day-to-day basis by parents with children." *In re H.S.,* 550 S.W.3d at 160. The court further held standing under that section does not require the nonparent's care and control of the child to be exclusive. *Id.* at 158.

Looking to the proof requirements of section 102.003(a)(9), there is no dispute that the grandmother is a person and not the foster parent of D.K.P. The mother, however, disputes whether the grandmother had actual care, control, and possession of D.K.P. for at least six months ending not more than ninety days preceding the date of the filing of the petition. The mother attached no summary-judgment type proof to her motion to dismiss. *See Miranda,* 133 S.W.3d at 228. However, evidence relevant to her motion was developed over the course of two evidentiary hearings. *See Clark,* 544 S.W.3d at 770-71 (explaining when a plea to the jurisdiction challenges jurisdictional facts the court,

5

when necessary, considers evidence even if the evidence implicates both subject matter jurisdiction and the merits of a claim).

Considered under the standard for actual care, control, and possession set out in *In re H.S.,* 550 S.W.3d at 160, we find the evidence the court heard raised a fact issue whether the grandmother had actual care, control, and possession of D.K.P. during the required six-month period. She filed suit on August 28, 2017; she has standing under section 102.003(a)(9) if she had actual care, control, and possession of the child for at least six months ending not more than ninety days preceding that date.

According to the grandmother's testimony, in 2009 the mother, her older son T., D.K.P., and three grandchildren over whom the grandmother has custody moved into a house with the grandmother; in December 2009, the grandmother, her three grandsons, and D.K.P. moved to an apartment where they remained until 2014; and that year, they moved to a three-bedroom apartment where the grandmother and D.K.P. remained at the time of the November 3 hearing. At the March 8 hearing, the grandmother agreed with a specific question that for 2017 up to July 28[4] D.K.P. was "primarily physically located" at the grandmother's residence. At that same hearing, on cross-examination, the grandmother agreed that D.K.P. was in her home from the time the mother adopted her. According to the grandmother, the mother picked D.K.P. up for visits every third or fourth weekend, usually for one or two nights. But, according to the grandmother, this pattern was "on and off." The grandmother testified that for "long periods of time" the mother

---

[4] According to the mother's testimony, she and the grandmother had a "major argument" on July 28. Despite the argument the child's principal residence remained unchanged.

"was just not there." By "long periods" the grandmother added that she meant "Months. Months."

By the mother's testimony, D.K.P. spent more time with her and less at the grandmother's. At the March 8 hearing the mother agreed with her attorney that "for years" she dropped D.K.P. off at the grandmother's, went to work, and then picked the child up after work. It is unclear from the testimony, however, to which period of time the mother was referring.

The mother testified D.K.P. attended public kindergarten and first grade but the grandmother and the mother agreed that the grandmother would homeschool D.K.P. until her reading improved. The mother said she believed the grandmother's homeschooling of D.K.P. was ineffective but she did not return the child to public school because the grandmother did not agree and "fought me tooth and nail."

On July 28, 2017, the mother came to the grandmother's apartment and the two began arguing, according to the mother, over discontinuing homeschooling. The mother attempted to take D.K.P. with her. The child eventually broke free of the mother and ran back to the grandmother's apartment. The mother left without D.K.P. and explained in testimony the child ran back to the grandmother's apartment because, "[a]ny child would want to stay where you don't have to go to school and you don't have to do normal things to be a productive person." At the November 3 hearing the mother testified she had not seen D.K.P. since July 28 because the grandmother would not allow it.

The mother testified that she provided food and clothing for D.K.P. and "helped pay bills," "whatever all of them needed." She explained D.K.P. was on the grandmother's

food stamp account because the grandmother "threw a fit." According to the mother, D.K.P. was listed on the grandmother's apartment lease as an occupant because "[w]e were all there." The mother agreed in testimony that mail concerning D.K.P. was sent to the grandmother's address. But this, she explained, was "because we lived there for long period of time."

The grandmother testified that the mother did not buy clothing for D.K.P., "and she did not do any kind of support financially at all." The grandmother agreed that she primarily provided food and clothing for the child. According to the grandmother, she also provided for D.K.P.'s education by homeschooling the child and paying the associated expenses. D.K.P. was on the grandmother's government assistance account and, according to the grandmother, the mother "signed [D.K.P.] over to [the grandmother's] account." The grandmother said she has "always taken care of all of [D.K.P.'s] medical needs and usually never informed [the mother]." She told the court that prior to the July 28 incident the longest period during which the mother did not talk to D.K.P. was probably three weeks.

Concerning the events of July 28, the grandmother agreed she planned for D.K.P. to have a visit with the mother. When the mother arrived, according to the grandmother, she had been drinking and was angry, apparently because the grandmother had allowed D.K.P. to go swimming. An argument ensued and the mother left without D.K.P. The grandmother testified she did not disagree with the mother taking D.K.P. that day; rather, she disagreed with her driving with the child.

## Conclusion

We conclude the grandmother's evidence demonstrated a genuine issue of material fact on the contested standing elements. Proof of the grandmother's care, control, and possession of D.K.P. is required to establish her standing to sue, and thus the trial court's subject matter jurisdiction to hear the case, and is relevant as well to her burden on the merits to rebut the presumption that the mother should be appointed the child's managing conservator. When facts germane to the jurisdictional issue are intertwined with those necessary for proof of the merits of the claim and a fact issue regarding the jurisdictional issue is shown, then the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder. *Miranda,* 133 S.W.3d at 227-28.

Accordingly, we reverse the trial court's order sustaining the mother's motion to dismiss and remand the case to the trial court for further proceedings.

James T. Campbell
Justice